# Young *versus* Edwards.

1. As a general rule, a party has not a right to give in rebuttal evidence which might have been given in chief; its admission is in the discretion of the court.

2. Evidence was offered by defendant *as rebutting* which was in contradiction of evidence given by plaintiff; not being offered for that purpose, it was not error to reject it.

3. By articles plaintiff contracted to convey to defendant 350 acres more or less; the land was 306 acres, and the deed was 302 acres more or less.   In an action for the purchase-money, the court charged that this deficiency was not evidence of fraud.   *Held* to be correct.

4. In an action on bonds given for purchase-money, there was evidence of fraud and misrepresentation by the vendor as to the land.   The court charged that to set aside the contract the evidence "must be clear and explicit, and lead to a satisfactory and certain conclusion.   The law does not use the words 'weight of testimony' concerning evidence to overthrow solemn duties and obligations," &c.   *Held* to be error.

5. In civil cases the jury determine according to the weight of evidence, and its sufficiency to produce conviction of absolute certainty.

6. No more is required than that the evidence should be sufficient to satisfy the conscience of a common man, so that he would act upon the conviction in matters of the highest importance to his own interests, although that be short of absolute certainty.

7. There is nothing in determining a question of fraud which makes it an exception.

8. The existence of fraud is to be proved as any other fact; the evidence is sufficient if it satisfy beyond a reasonable doubt.

22 P. F. Smith—17

October 29th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Cambria county:* No. 77, to October and November Term 1872.

This was a feigned issue in which Lewis R. Edwards was plaintiff and Andrew Young defendant, under the following circumstances:—

On the 29th of June 1870, the plaintiff agreed to convey to the defendant 350 acres of land, more or less, in Cambria county, having a flouring-mill and saw-mill thereon erected; also, the right to cut and take off all timber over 18 inches in diameter, on 97 acres of land adjoining the 350 acres and owned by Peter Parrish, &c., and, also all the cherry, &c., on a tract of land in Blacklick, &c. In consideration, Young agreed to convey to Edwards a tract of land in Indiana county, containing 98 acres more or less, with a flouring-mill, &c., thereon; and, also to pay Edwards $4000 in lumber, to be delivered at Ebensburg, viz., $1000 worth on or before the first day of April in each of the years 1871, 1872, 1873 and 1874.

On the 18th day of July 1870, for the purpose of carrying out the articles of agreement, Edwards by deed conveyed to Young certain land, afterwards by survey found to contain 306 acres 71 perches.

The land conveyed was composed of several tracts; one was described as "that other piece," &c., of land * * * having thereon erected a frame grist-mill and frame saw-mill, being the reserved part mentioned in deed to Sherry and from Sherry to Parrish. In neither of these deeds to Sherry and to Parrish, did there appear any reservation whatever.

The aggregate contents of all the tracts was about 303 acres and 72 perches.

On the same day, Young executed and delivered to Edwards, four bonds with warrants of attorney to confess judgment; the first payable April 1st 1871, the others on the 1st of April of each of the succeeding years. On each of these bonds, judgment was entered on the 4th of February 1871.

On the 30th of March 1871, the defendant made an affidavit that the mills on the land sold to him by the plaintiff, for part of the consideration of which the bonds were given, had not the capacity represented, that the boundaries were not where they had been represented by the defendant; that the timber pointed out at the time of the negotiation as being on the land to be conveyed, was not on it, and that the conveyance was defective, and therefore the consideration of the bonds had failed.

On this affidavit, the judgments were on the 5th of February 1872 opened and a feigned issue awarded to try the facts alleged in the affidavit.

[Young v. Edwards.]

The case was tried, March 11th 1872, before Dean, P. J.

The plaintiff gave in evidence the four bonds before mentioned, and rested.

The defendant then gave in evidence the articles of agreement of June 29th 1870; also that upon a survey made June 22d and 23d 1871, one line of the survey ran through the dam of the mills, the lines were run in accordance with the deed, Edwards to Young.

He gave evidence that when Young was looking at the land, Edwards told him the saw-mills would cut 8000 feet per day; that the grist-mill had a good power and was in good running order, and he had right to raise the dam three feet without damming the water off his own land. Edwards showed him timber land, which he said was his. He gave evidence that the saw-mill would not cut more than 3000 feet per diem; that the water could not be raised any more on the land; that the grist-mill had little or no power; that the wheels were not sufficient to run a grist-mill; that the timber pointed out was on adjoining land, and that plaintiff showed him about 60 rods over the neighbor's line, as being part of the land he sold to defendant.

He gave evidence also, that his property in Indiana county was worth $6000 or $7000, and that the property sold to him by plaintiff, was not worth more than from $2000 to $3000; also that plaintiff said that there were 350 acres in the tract.

In rebuttal, Robert Lytle and Robert McKeage testified for the plaintiff, that they had bought from him one-half of defendant's Indiana property for $1500. He gave evidence also in answer to defendant's evidence as to misrepresentations; as to the capacity and power of the mills, the timber alleged to be on the land, and to defendant's case generally.

The plaintiff rested.

The defendant then called Jacob Zern, and proposed to prove by him, that

"L. R. Edwards, the plaintiff in this suit, after the deed had been executed by Young for Indiana property, told witness that he had sold his, Edwards's, interest in the Indiana property for $4000, for the purpose of showing that the Indiana property was worth more than the property in Cambria county, conveyed by Edwards to Young." To this offer the plaintiff objected, for the reason that said testimony is not in rebuttal to any portion of the testimony of plaintiff adduced by plaintiff in answer to the defence, and if evidence for any purpose it should have been offered in reply to plaintiff's primâ facie case.

The court rejected the offer, and sealed a bill of exceptions.

The court charged:— * * *

" It appears from the evidence, that Edwards, the plaintiff, was, on the 29th of June 1870, a resident of this county, where he

owned a tract of timber land, amounting to something over 300 acres, having thereon erected a saw-mill, grist-mill and dwelling-houses. [We have been asked by the defendant to say to you, that from the evidence, the saw-mill and grist-mill are not on the land described in the deed; we decline to say so, but on the contrary, say to you, that the deed which purports to convey this land, and the description and references therein are sufficient to pass the saw-mill and grist-mill to the vendee in that deed, and it having been shown that Edwards at the time he executed the deed had a title to the land on which the saw-mill and grist-mill are erected, that title by his deed vested in Young, the defendant, and that on this point there is no evidence for your consideration.]

"It appears further, from the evidence, that Young, the defendant, on the 29th of July 1870, was a resident of Indiana county, where he owned a tract of improved land, on which were erected a grist-mill and saw-mill. On that day the parties entered into a written agreement for the exchange of their properties. * * * By the agreement, they were to exchange properties; Young to pay $4000 boot-money, in lumber, without interest. On the 18th of July following the deeds were exchanged, and Young signed and delivered to Edwards the four judgment-bonds now in dispute, the payment of which is resisted.

"As the evidence is somewhat voluminous, we shall endeavor to state to you as briefly as possible the main points of the defence, going to show, as is claimed by him, misrepresentation, fraud and want of consideration.

"I. [He claims that he did not get the quantity of land that Edwards agreed to convey, and that the deed purports to convey. The deed purports to convey 300 acres more or less. The defendant claims that there is a deficiency of 24 acres. This is not great enough to afford any evidence of fraud or misrepresentation, nor is it enough to warrant the court in interfering to aid the defendant in resisting payment of the purchase-money or any portion of it. The deed does not purport to fix exactly the quantity, and the defendant after accepting it, with its wording *more or less*, cannot for such slight deficiency have a deduction from his purchase-money. So far as this point is concerned, the contract must be treated as if he had got the 300 acres.]

"II. The defendant claims, that Edwards, in showing him over the property, falsely represented to him that certain land, well timbered and more valuable than any portion included in the description of the land in the deed, was included in, and formed part of that which he, Edwards, proposed to exchange.

"III. The defendant further claims that Edwards falsely represented to him that the saw-mill, which formed part of the property, was a good mill, and would cut from 7000 to 8000 feet

of lumber per day, and that the grist-mill was perfect, well built, and in all respects would perform well its work.

"IV.  And further, that Edwards falsely represented to defendant that the land overflowed, or covered by the water of the mill-dam, was his, and that the deed he proposed to execute would convey all the land and more, than was covered by the water of the dam.

"Before directing your attention to the evidence directly bearing on these points, we refer you to that relating to the comparative value of the two tracts of land. * * * If the evidence satisfies you that the Edwards property is much less valuable than the Young property, it may be a circumstance to aid you in arriving at a verdict when taken in connection with the other evidence in the case. * * *

"The evidence on this question is conflicting, but is for you.  If you are satisfied that there was a great difference in value, it is a fact to be taken into consideration by you in determining from the other evidence in the case whether there was fraud, false representation and failure of consideration.

"As to the law applicable to the case under the evidence, we say to you that if the plaintiff, Edwards, either wilfully or unintention-. ally misrepresented to Young material facts within his knowledge, and not within the knowledge of Young, and Young was thereby induced to pay more on the exchange of land than he otherwise would have done, Edwards cannot collect from Young, the party deceived, more than Young in equity and good conscience ought to pay; and while this is the law, we say further that the evidence of misrepresentation must show misrepresentation of a material fact or facts by Edwards, and further that Young relied upon and put trust in these misrepresentations when he purchased.  It is not enough to show that a fact relied upon by Young did not exist; the fact relied upon by him must have been falsely represented by Edwards to exist.  The representation must not have been a mere expression of opinion on matters equally open to the investigation and observation of both parties.  The plaintiff has four judgments entered on solemn obligations, signed and sealed by the defendant.  By these he acknowledges to owe $4000.  [To set aside or vary this contract, to say that he shall pay only part of this amount or none of it, requires that the evidence of false representations, and that Young relied upon them, must be clear and explicit; must lead to satisfactory and certain conclusion. The law does not use the words 'weight of testimony' concerning evidence to overthrow and set aside solemn deeds and obligations; it uses stronger words, and demands that the evidence shall be clear and explicit, and lead to a satisfactory and certain conclusion.]

"Is the evidence in this case of that character?  It is for you, and after adverting to the evidence, which defendant claims makes

out his defence, to this issue, and that of plaintiff in reply to the same, we will leave the matter with you.

" Concerning the false representation as to the timber land, it appears that there were present, when Edwards showed the timber land to Young, the two sons of Young, William and Joseph; they and their father testify that Edwards conducted them through a corner of the land included in the boundaries of this deed, and then some distance—one of the witnesses says 60 rods—through lands now ascertained to belong to one Dr. Bradley; that while so doing Edwards represented that this Bradley land belonged to him, and forms a part of the land he proposed to exchange—that this Bradley land was well timbered, and would, if it had belonged to the Edwards tract, have added largely to its value.   This is the testimony of old Mr. Young and his two sons—they further testify that afterwards, when the surveyor ran the boundaries of the tract from the deed of Edwards, they for the first time discovered that the Bradley tract was not included.   If Edwards did so represent, and Young, relying on this representation entered into the contract, it would be such a misrepresentation, as would entitle Young to a deduction from the purchase on these judgments to an amount equal to the damage sustained by reason of the misrepresentation ; that damage would be the difference in the value of that which he thought he was getting, and that which he actually did get by the deed, because it is not pretended that this Bradley land is conveyed by the deed.   It would not matter whether Edwards wilfully falsified as to this Bradley tract, or was only mistaken as to the boundaries of his own tract ; when he undertook to point out his own land, he was bound to know where it was, and whether he made a mistake, or uttered a lie, he cannot claim payment for that which he did not convey.

" The plaintiff denies that Edwards either falsely or mistakenly represented the Bradley land to be his. * * *

" Did Edwards represent the Bradley tract or any portion of it as belonging to the tract he proposed to exchange ? if so, did Young, relying upon this representation, give more than he otherwise would have given ?   If the evidence clearly shows this false representation, as claimed by defendant, then you will deduct in making up your verdict, from this purchase-money or bonds, the difference in the value of what Young thought he was buying and what he actually got by the deed.

"The defendant claims, that Edwards falsely represented to Young that the saw-mill would cut from 7000 to 8000 feet of lumber per day, while in fact it would only cut about 2000 feet,— and that the grist-mill was a good one, when in fact it was almost worthless.   The defendant and his sons testify that since they have had the saw-mill it has cut but 2000 feet per day, and that they have only been able to grind about 10 bushels of grain in the

grist-mill per day. [You then have the evidence on the other side that the Youngs are unskilful and indolent, and that the mills are not kept in repair—that the saw-mill, when Edwards had it, averaged 5000 feet per day, and that at one time when tested it cut about 12,000 feet in 12 hours]; also, the testimony of Tibbott that when he ran the grist-mill it would grind between two and three bushels per hour, and the other evidence on this point. It does not seem to us clear, but it is all for you. If the Youngs, as testified to by themselves, were millers and millwrights, the construction, location and capacity of mills were matters with which they might be presumed to be familiar. [They were there on the ground, and unless it clearly appears that Edwards misrepresented the capacity of the mills, and that Young relied on such representations, and not on his own judgment, you should allow no deduction for the alleged deficiency in this respect.] If there was, however, a false representation, and Young relied upon it, and gave a greater price than he otherwise would have done, then deduct from these judgments an amount equal to the damage sustained by him. * * *

"The defendant further claims that Edwards falsely represented to him that he was the owner of all the land covered by the waters of the mill-dam, and that even if the breast of the dam were raised three feet higher, the back-water would still be on the Edwards land. The defendant, Young, testifies that Edwards so told him during the progress of the negotiations, and that the survey has since demonstrated that the land overflowed by the water of the dam is not included in the land conveyed by the deed. Bearing in mind what we have said in reference to the other alleged false representations, you will determine whether there was a false representation of a material fact in this particular. * * *

"Under the instructions we have given you, consider:—

"I. [Whether the evidence clearly shows that Edwards falsely represented the Bradley land to be his, and part of that which he proposed to exchange and convey, and did Young, relying on such representation, give more for the land than he otherwise would have done?]

"II. Did Edwards falsely represent the capacity and condition of the mills, and did Young give more because of such representations?

"III. Did Edwards falsely represent the extent of his ownership of the land covered by the mill-dam, and did Young rely on such representation and give more for the property than he otherwise would have done? * * *"

The verdict was for the plaintiff for $3959.50.

The defendant took a writ of error, and assigned for error the rejection of his offer of evidence, and the parts of charge enclosed in brackets.

*G. M. Reade*, for plaintiff in error.—The testimony offered had a direct bearing upon the value of the property in Indiana, yet it was not properly cumulative, but was in reply to new matter conflicting inferentially with the defendant's case, and was therefore admissible, although it might have been admitted in chief; this is an exception to the general rule, recognised in Stetson *v.* Croskey, 2 P. F. Smith 230, 231; 1 Green. E. § 2; Sidle *v.* Walters, 5 Watts 399; Devall *v.* Burbridge, 4 W. & S. 305.    In an issue to try whether a judgment was given for more than was due in fraud of creditors, after evidence tending to show the affirmative, declarations of the judgment-debtor are admissible: Brown *v.* Parkinson, 6 P. F. Smith 336; although this was a feigned issue the court could make no order depriving the defendant of legal testimony: Ferree *v.* Thompson, 2 P. F. Smith 353.    An ambiguity upon the face of a writing is for the court to explain, but if the uncertainty arises from extrinsic evidence, the question must go to the jury: Beatty *v.* Lycoming Co. Ins. Co., 2 P. F. Smith 456.    Where the evidence is partly written and partly parol it is error to exclude it from the jury: Fish *v.* Brown, 5 Watts 441; Slonecker *v.* Garrett, 12 Wright 415; Wilt *v.* Snyder, 5 Harris 77; Sailor *v.* Hertzogg, 10 Barr 296; Armstrong *v.* Hussey, 12 S. & R. 315; Madara *v.* Eversole, 12 P. F. Smith 160, 165.    Where land can only be described or identified by matters not in the deed, and appearing by parol, the jury are to decide what land was the subject of the contract: Richardson *v.* Stewart, 2 S. & R. 84; Nourse *v.* Lloyd, 1 Barr 229.    In connection with other evidence of fraud, the difference in quantity of land represented was evidence of fraud, but the court instructed the jury, as matter of law, that the deficiency was "not great enough to afford any evidence of fraud or misrepresentation:" Boar *v.* McCormick, 1 S. & R. 166; Philips *v.* Scott, 2 Watts 318.    The words "more or less," in a conveyance, sometimes will extend only to a small difference: Frederick *v.* Campbell, 13 S. & R. 136.    The rule laid down that the testimony respecting fraud and misrepresentation "must be clear and explicit, must lead to satisfactory and certain conclusion," was quite too severe.    Satisfactory evidence is that amount of proof which ordinarily satisfies an unprejudiced mind beyond reasonable doubt: 1 Greenl. on Evidence §§ 1, 2; Hiester *v.* Laird, 1 W. & S. 245.

*R. L. Johnston* (with whom were *Shoemaker & Sechler*), for defendants in error.

The opinion of the court was delivered, January 6th 1872, by

WILLIAMS, J.—There was no error in overruling the offer in evidence of the declarations of the plaintiff below as to the amount for which he had sold his interest in the Indiana county property conveyed to him by the defendant.    They were offered for the purpose

of showing that the property was worth much more than that in Cambria county conveyed to the defendant by the plaintiff. Undoubtedly they were competent and legitimate for this purpose if they had been offered in chief. But as a general rule a party cannot claim as a right to give as evidence in rebuttal that which he might have given in chief: Stetson v. Croskey, 2 P. F. Smith 230. The evidence proposed to be given was merely cumulative and not within any exception to the rule; and in such case it is well settled that it is within the discretion of the court to admit or reject evidence offered in rebuttal which might have been given in chief. But it is insisted that the evidence ought to have been received because it tended directly to rebut the testimony of Lytle and McKeage. If admissible for this purpose, it does not follow that it was error to reject it. A party cannot offer evidence for a specified purpose, and complain when it is rejected that it was legitimate for another and distinct purpose: Gaines v. Commonwealth, 14 Wright 319.

Nor was there error in charging the jury as complained of in the second assignment. There was not a particle of evidence tending to show that the saw-mill and grist-mill are not on the land described in the plaintiff's deed to the defendant. The court was, therefore, clearly right in not submitting the question to the jury, and in instructing them "that the deed which purports to convey the land, and the description and references therein are sufficient to pass the saw-mill and grist-mill to the vendee in the deed." If, as is not denied, the plaintiff below at the time he executed the deed, had title to the land on which the saw-mill and grist-mill are erected, there can be no doubt of the correctness of the instruction that the title vested in the defendant by the conveyance.

The next matter of complaint is, that the court erred in charging the jury in substance that the deficiency in the quantity of the land agreed to be, and actually conveyed, by the plaintiff to the defendant was not great enough to afford any evidence of fraud and misrepresentation, and in not submitting the question to the jury for their determination. It appears from the charge of the court that the defendant claimed that there is a deficiency of twenty-four acres. But we see no evidence of such deficiency. By the articles of agreement the plaintiff stipulated to sell and convey to the defendant three hundred and fifty acres of land in the townships of Blacklick and Carroll, Cambria county, be the same more or less, having a flouring-mill and saw-mill thereon erected. The deed which he executed in pursuance thereof, and which was accepted by the defendant without objection, purports to convey in the aggregate about 302 acres and 72 perches more or less, exclusive of the parcels excepted and reserved from the conveyance. The actual quantity conveyed, as ascertained by the survey subsequently made for the defendant, is 306 acres and 71 perches.

[Young *v.* Edwards.]

There was then no foundation for the alleged claim that there was a deficiency in the quantity of land which the deed purported to convey. The plaintiff was not bound, by the terms of the agreement, to convey a specific quantity of land to the defendant, and as the agreement was merged in the conveyance, the latter must be regarded as the final contract between the parties. Whether the plaintiff in showing the defendant the land, at the time the parties were negotiating the exchange, falsely represented that the Bradley tract, which was well timbered and more valuable than any portion embraced in the deed, was included in and formed part of that which he proposed to exchange, was fairly submitted to the jury with the instruction that if the plaintiff did so represent, and the defendant relying on the representation entered into the contract, it would be such a misrepresentation as would entitle him to a deduction from the judgments for the purchase-money to an amount equal to the damage sustained by reason of the misrepresentation. And the jury were properly told that the damage in such case would be the difference in the value of that which he thought he was getting, and that which he actually did get by the deed. We think that the defendant below has no reason to complain of the charge as it respects that part of his defence which was founded on the alleged fraud and misrepresentation of the plaintiff in regard to the location, quantity and quality of land which he proposed to sell or exchange. The jury were told by the learned judge that it would not matter whether the plaintiff wilfully falsified as to this Bradley tract, or was only mistaken as to the boundaries of his own tract. When he undertook to point out his own land he was bound to know where it was; and whether he made a mistake or uttered a lie, he cannot claim payment for that which he did not convey.

But while the instructions in this respect were proper, we think that the rule laid down by the court as to the amount of proof necessary to establish the defence to the judgments, on the ground of the alleged fraud and misrepresentation of the plaintiff, was erroneous and calculated to mislead the jury. The court said: "The plaintiff has four judgments entered on solemn obligations, signed and sealed by the defendant. By these he acknowledges to owe four thousand dollars. To set aside or vary this contract; to say that he shall pay only part of this amount or none of it, requires that the evidence of false representations, and that Young relied on them, must be clear and explicit, must lead to a satisfactory and certain conclusion. The law does not use the words "weight of testimony" concerning evidence to overthrow and set aside solemn duties and obligations; it uses stronger words, and demands that the evidence shall be clear and explicit, and lead to a satisfactory and certain conclusion. Is the evidence in this case of that character ?"

[Young v. Edwards.]

If by "certain conclusion" the court meant, as it evidently did, a conclusion in regard to which there must be no doubt resting on the minds of the jury, it needs no argument or authority to show that the instruction was erroneous. In civil cases the jury determine facts according to the weight of evidence, and not by its sufficiency to produce conviction of the absolute certainty of the conclusion arrived at. In most cases of conflicting evidence such a degree or amount of proof would not be attainable, and to require it would be tantamount to a denial of justice. If the evidence is sufficient to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest, 1 Stark. Evid. 514, it is all that the law requires, though such conviction may come short of absolute certainty. There is nothing peculiar in the determination of a question of fraud that makes it an exception to the general rule. Where there is evidence of fraud, its existence must be determined like any other fact. But in this case the jury were told in effect that, in determining the question, they must not be governed by the weight of evidence; that the evidence tending to show the alleged fraud must lead to a satisfactory and certain conclusion; otherwise, such is the plain implication, the evidence must be disregarded. What else could the jury have understood from this instruction, than that the evidence of the fraud must be so clear and convincing as to leave no doubt resting on their minds? If this were the rule, it would be difficult to establish fraud in any case. But the law does not require so high a degree of proof. If the evidence satisfies an unprejudiced mind, beyond reasonable doubt, it is sufficient.

Judgment reversed, and a *venire de novo* awarded.