## Snyder, Appellant, *v.* Phillips.

*Evidence—Parol evidence—Reformation of written instrument—Mistake.*

In order ,to alter a written contract by adding a stipulation, alleged to have been omitted, there must be clear, precise and indubitable evidence that it was the understanding of both parties that it should be inserted in the writing. To reform the written agreement on the ground of fraud or mistake the evidence must be clear, precise and indubitable.

If the evidence produces a clear conviction, without hesitancy, of the proof of the precise fact in issue it is sufficient; the law does not require proof so convincing as to leave no doubt resting on the minds of the jurors; it is enough if there be evidence to satisfy an unprejudiced mind beyond reasonable doubt.

A gas lease contained the following clause: " It is agreed that if gas is found, in paying quantities, the consideration for each well shall be the sum of four hundred dollars payable quarterly in advance." The lessor signed the lease without reading it. He subsequently claimed that the words " per annum " had by mistake been omitted after the word " dollars." The lessee denied this fact wholly and unqualifiedly. The court gave proper instructions as to the measure and quality of oral proof necessary to reform a written instrument. The jury found a verdict for the lessee. *Held,* that a judgment on the verdict should be sustained.

Argued May 11, 1904. Appeal, No. 32, April T., 1904, by plaintiff, from judgment of C. P. Butler Co., Sept. T., 1902, No. 45, on verdict for defendant in case of Edward Snyder v. Thomas W. Phillips. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Assumpsit for rentals under a gas lease. Before GAL-BREATH, P. J.

The facts appear by the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were answers to various points.

*S. S. Mehard,* with him *A. T. Scott* and *H. H. Goucher,* for appellant.—It was a sufficient ground to reform the lease if the parties agreed that the gas rental should be $400 per annum, and the words " per annum " were omitted through the oversight of the scrivener, without the knowledge of the lessor, but with the knowledge of the other party, who wrong-

fully kept silence as to the omission: Gower v. Sterner, 2 Whart. 75; Huss v. Morris, 63 Pa. 367; Gump's Appeal, 65 Pa. 476; 2 Pomeroy's Equity, secs. 847, 853, 854; 3 Pomeroy's Equity, sec. 1376; Cook v. Liston, 192 Pa. 19; Crookston Improvement Co. v. Marshall, 57 Minn. 333 (59 N. W. Repr. 294).

*Clarence Walker*, for appellee.

Opinion by Orlady, J., July 28, 1904:

This action of assumpsit was brought to recover rent claimed to be due on an oil or gas lease, dated August 17, 1900. The clause through which the controversy arose is as follows: "It is agreed that if gas is found, in paying quantities, the consideration for each well shall be the sum of four hundred ($400) dollars, payable quarterly in advance." The plaintiff sets out in his statement of claim that the written lease did not contain the entire agreement, as the plaintiff's attorney, in drafting the lease, had inadvertently omitted therefrom the words "per annum," which should have immediately followed the word "dollars"; and that the lease as drawn was executed and delivered, and the mistake or omission was not discovered by the plaintiff until after the defendant had refused to pay more than the first year's rent.

The defendant denied this fact wholly and unqualifiedly, and insisted that the writing was the consummation of the contract between the plaintiff and himself. The plaintiff admits that he had received from the defendant the following payments: $100 in February, May, August and November, in all the sum of $400, and claims in this action, the sum of $200 as quarterly rent of a gas well, falling due in February and in May, 1902, with interest thereon.

From the plaintiff's testimony it appears that at the inception of the transaction, the defendant had submitted a written lease for his signature, which he had refused to sign. It was, however, left with the plaintiff's attorney for further examination and the plaintiff again refused to sign it and returned it to the defendant. When the parties met a few days later the plaintiff suggested that they go to his attorney and have him write it up. After the plaintiff's attorney had prepared the

lease for the signature of the parties, the defendant called the attention of the plaintiff and his counsel to what he termed an unusual clause, stating that said clause was different from any that he had used, and he wanted to pay for a gas well on same terms as an oil well. Plaintiff's counsel insisted that it was not an unusual clause, " as we had many of them in use " and that the agreement, as written, was submitted as the final proposition by the plaintiff.

The provision quoted does not refer to the payments as rental. On December 10, 1900, before any payments were made, the defendant wrote to the plaintiff stating: " In case we miss oil in the hundred foot, there is a possibility that we can get some gas in the lower sands, but it is not likely that we would get enough gas to justify us in paying $400 for the well. Before drilling a well below the hundred foot sand, we would like to have the gas clause changed, either to our own form or to any reasonable sliding scale, so that we would be willing to utilize a small well," and on February 7, 1901, the defendant again called plaintiff's attention to the gauge of pressure and expressed a desire to fix a rental of the well, on a reasonable basis, and especially called his attention to the gas clause in the lease by quoting it in full, and stated that they had never had it printed in any of his leases, because it was almost certain to prove inequitable to one of the parties, and thereby cause dissatisfaction, and further : " If the well should last, say ten years, $400 would be the total amount due you." The following day the plaintiff replied : " I cannot make you pay for this well if it is not worth piping. Now, on the other hand, you state in your letter, if it prove to be a good stayer, say for ten years, why $400 would be the total amount due me. Now in that line, you could hold the farm ten years for the sum of $400. I don't think there would be very much in it at that for me. If you intend drilling another well soon, I might be able to drop a little, and if not, haven't anything more to say. It is all left to you."

The plaintiff submitted but one point, namely : " If the jury find from the evidence that it was agreed between the plaintiff and the defendant, at the time of the execution of the lease in suit, that the gas rental should be $400 per annum, payable quarterly in advance, and that by mistake or accident, the

words, per annum, were omitted from the writing, the plaintiff is entitled to have the lease reformed by the insertion of such words, so omitted from the writing, in order to make it conform to the agreement of the parties, and in that case the plaintiff would be entitled to recover." The court said : " This is affirmed, provided, the jury find the facts assumed in this point to be true, and are satisfied of that beyond reasonable doubt." The court also affirmed the defendant's first point which was in substance, that to entitle the plaintiff to recover, he must satisfy the jury, by evidence that is clear, precise, and indubitable, that is beyond reasonable doubt, that the alleged mistake in the making of the contract sued on, was mutual.

This suit was brought August 5, 1902. It is not alleged in the plaintiff's statement of claim, nor suggested in the evidence, that the defendant had attempted to perpetrate a fraud upon the plaintiff, the sole contention being that the words " per annum " had been omitted by accident, and that the mistake was mutual. In order to recover, the plaintiff must, of course, reform his contract, a duplicate of which he had received at the time of its execution.

In Murray v. N. Y. L. & W. R. R. Co., 103 Pa. 37, the court below in instructing the jury said : " In order to alter the written contract by adding a stipulation, alleged to have been omitted, there must be clear, precise and indubitable evidence that it was the understanding of both parties that it should be inserted in the writing. To reform the written agreement on the ground of fraud or mistake, the evidence must be clear, precise and indubitable." Which instruction was repeated to the jury seven times, and the Supreme Court said, " This instruction was not too strong, and as it is good law, its repetition to the jury should have done no harm. We do not wish to be misunderstood upon this question. If a solemn instrument, like a deed, which has been upon record for many years, can be reformed and titles destroyed by parol evidence, which is anything short of clear and indubitable, no one would care to hold real estate in Pennsylvania, for it would be a most uncertain holding. A deed should be worth something, as it would possess little value if it could be set aside by loose testimony of parties in interest. Where evidence of fraud, accident or mistake is so direct and clear that a chancellor would

reform the deed, it is one thing. Anything short of such evidence ought not to be submitted to a jury." In Ott v. Oyer's Executrix, 106 Pa. 6, it is said : " To overthrow a written contract it is necessary that parol evidence be clear, precise and satisfactory. It is sometimes said that the evidence must be clear, precise and entirely satisfactory ; or full, satisfactory and indubitable ; but the context showed that such expressions did not mean that it is requisite that the evidence should lead to a certain conclusion. If used, it should be manifest that the jury understood them in the sense of the rule. Where written instruments are sought to be reformed, the jury must not hesitate or doubt; they must have clear convictions; they must believe the witnesses and must find the facts in issue definitely and distinctly established. Absolute certainty is out of the question where facts are to be found from oral testimony and circumstances : Spencer v. Colt, 89 Pa. 314.

If the evidence produces a clear conviction, without hesitancy, of the proof of the precise fact in issue it is sufficient ; the law does not require proof so convincing as to leave no doubt resting on the minds of the jurors ; it is enough if there be evidence to satisfy an unprejudiced mind beyond reasonable doubt : Young v. Edwards, 72 Pa. 257.

The degree of proof required in such cases is clearly fixed in Boyertown National Bank v. Hartman, 147 Pa. 558, to wit: " The standard of proof in such cases is clear, precise and undubitable. What is meant by undubitable proof, in connection with such cases, is evidence that is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond reasonable doubt. In the very nature of things, that conclusive of absolute proof, which results from the production of record evidence or rests on the solution of a mathematical problem, can never be the effect of the verbal testimony of witnesses."

From the plaintiff's own showing the alleged mistake was due to his supine negligence in not reading the agreement before he signed it. He accepted the stipulated consideration after his answer to the defendant's proposition for an amendment of the terms, and slept on his own rights, as he alleged them to be, until the defendant had expended his money and assumed the respon-

sibility in connection with the property; consequently the law will not aid him in correcting an alleged mistake for which he alone is responsible. The defendant did not make this contention but agreed that the dispute should be submitted to a jury, which tribunal has passed upon the fact under a full and adequate charge that contained full instructions of the measure of proof required in such cases.

The judgment is affirmed.