# Metcalf, Appellant, *v.* Buck.

*Deeds—Description—Courses and distances—Monuments—Ejectment—Evidence.*

The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by proof of their former existence when the marks or monuments are gone.

In an action of ejectment where both plaintiff and defendant claim under deeds from the same grantor, but the defendant's title is older, and it also appears that the grantor had made two plans of lots, on one of which the plaintiff relies, the defendant can only be affected by the plan on which the plaintiff relies when it is shown that that was the plan by which defendant's land was described.

In such a case where the defendant claims that she bought according to monuments on the ground, she may show that the grantor went on the ground and caused oak stakes to be set, indicating the corners and side lines of the lot sold to the defendant and adjoining owners, and that fences were erected by the owners, including the plaintiff, in accordance with the lines claimed by the defendant.

*Evidence—Witness—Interest of witness—Competency of witness.*

The interest which disqualifies a witness, is a vested interest in the event of a suit, but not in the question involved. It must be such an interest as the judgment in the case would operate upon. Such an interest may affect the credibility of the witness, but not his capacity.

In an action of ejectment where both plaintiff and defendant claimed from the same grantor, who was dead at the time of the trial, an owner of land adjoining land of one of the parties, who has no interest in the land in suit, is a competent witness for one of the parties, although he is interested in the question involved as affecting his own land.

Argued March 3, 1908. Appeal, No. 13, March T., 1908, by plaintiff, from judgment of C. P. Wyoming Co., Jan. T., 1906, No. 139, on verdict for plaintiff in case of H. F. Metcalf v. Emma M. Buck. Before RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ. Affirmed.

Ejectment for land in Lemon township. Before FERRIS, J., specially presiding.

At the trial it appeared that Dr. E. L. Dieffenderfer, in 1882, became the owner of a tract of land bordering on the shores of Lake Carey, and that he caused this land to be laid out in lots by T. A. Miller, a surveyor. Both plaintiff and defendant claimed under deeds from Dieffenderfer. The facts relating to the conflicting boundaries are stated in the opinion of the Superior Court.

L. E. Stearns, a grantee of a lot from Dieffenderfer, was called by the defendant, and the following offer was made:

Counsel for defendant offers to show by the witness upon the stand, and by other witnesses, that while Dr. Dieffenderfer was the owner of the land adjoining the lands designated by witness, that he pointed out to the witness the line to the owners and that some of them erected fences upon the lines so pointed out by him, among them being the line fence between lot No. 1 and lot No. 2, between lot No. 2 and lot No. 3, and between lot No. 4 and lot No. 5, and to show by the witness that at the time he did so there were stakes and monuments upon the ground corresponding with the location so pointed out by Dr. Dieffenderfer as being the location of the line between the lots then designated.

This for the purpose of showing that the line between the plaintiff and defendant, as indicated by the fence upon the ground, and between other lots, namely, between lots No. 4 and No. 5, is the true location between those two lots, and propose to show other monuments upon the ground indicating the division line between the lots referred to.

This is objected to by counsel for the plaintiff:

1. That declarations made by Dr. Dieffenderfer, as to the location of the division line between the lots conveyed, is immaterial, irrelevant and incompetent, and, further, that such declarations, if made, would be within the statute of fraud.

2. That any testimony as to stakes on the ground is immaterial, irrelevant and incompetent, unless it be shown they were put there by the surveyor at the time the plot referred to in the deed was made, and for the purpose of locating the division line of such lots.

The Court: I will take it as a designation by the grantor of monuments, as proposed to be shown by the witness, fixing upon the ground the lines described in the deed. It seems to me it is admissible for that purpose, and, perhaps, as an admission against interest by the predecessor in title. The objections are overruled and the evidence admitted; to which the defendant excepts and at his request an exception is noted and bill sealed. [1]

Mrs. L. E. Stearns testified as follows:

"Q. Do you recollect of your husband building a fence upon the ground just north of the summer pavilion there? A. Yes, sir. Q. Do you recollect of seeing any stakes along there where that fence was built? A. Yes, sir; where they built the fence. Q. And they built the fence along where the stakes were? A. Yes, sir."

Counsel for plaintiff renew the same objections which were made to similar testimony when Mr. Stearns was on the witness stand.

The objections to Mr. Stearns' testimony being as follows:

1. That declarations made by Dr. Dieffenderfer, as to the location of the division line between the lots conveyed, is immaterial, irrelevant and incompetent, and, further, that

such declaration, if made, would be within the statute of fraud.

2. That any testimony as to stakes on the ground is immaterial, irrelevant and incompetent, unless it be shown they were put there by the surveyor at the time the plot referred to in the deed was made, and for the purpose of locating the division line of such lots.

The Court: The objection is overruled and the evidence admitted; to which the plaintiff excepts and at his request an exception is noted and bill sealed. [2]

The court charged in part as follows:

[I am referring now to what I said a moment ago as to the contemporaneous construction of an instrument by the parties, and you may apply that principle in construing the act of Dr. Dieffenderfer and Mr. Stearns as to the location upon the ground of certain lot lines mentioned in the deed and in the plot of Miller.

In that connection we also instruct you as matter of law that where the courses and distances in a deed are in conflict with monuments upon the ground, the monuments upon the ground govern. They will control the location of the land. Monuments upon the ground are stakes or stones set for corners, trees marked for corners or for line trees, and natural objects called for as corners or to identify the line; and, in general, whatever is done by the surveyor in placing upon the ground the results of his survey, and where there is a conflict between the monuments upon the ground and the courses and distances in the deed, what the surveyor has done upon the ground is supposed to mark the true line and control the courses and distances.

In this connection you may, in trying to ascertain what monuments there were upon the ground, so far as this tract that was plotted by Mr. Miller is concerned, consider the testimony of Mr. Stearns, of Mrs. Stearns and of Mr. Knuppenburg, as to what was done between Dr. Dieffenderfer and Mr. Stearns and what was done pursuant to the survey as to the putting in of stakes. It is not my intention to attempt to detail all this

to you as it was given by the witnesses, but briefly to refer to it.

You will remember the testimony of Mr. and Mrs. Stearns as to Dr. Dieffenderfer pointing out the line of Mr. Stearns' lot No. 1, including the triangle, and his testimony that the fence was built upon the line as so pointed out by Dr. Dieffenderfer, and that stakes were put there before the fence was built, and that the fence was built according to the stakes, and extended from the end of the stone wall near the pavilion on the lake shore up to Lake street, giving to Mr. Stearns the entire fifty feet of the triangle and the fifty feet rectangular lot, giving him, in other words, 100 feet, which he claims, and which is 'shown on the Miller map as the distance to be covered by that lot of ground.

Also you may take into consideration the testimony of the same witnesses as to Dr. Dieffenderfer pointing out to Mr. Stearns the line of lot No. 2, after the purchase by him of lot No. 1, and which he afterwards bought from Dr. Dieffenderfer, adjoining Mrs. Buck's land. You have the testimony of these witnesses as to the location of these lots by Dr. Dieffenderfer, on the ground, and as to the existence of stakes which were set there and had been there some years.

You will remember the testimony of Mr. Knuppenburg also as to the general staking out of that plot of lots. Also his testimony as to the location of the fences which were afterwards built upon the lines which had been staked out, and as to who did the staking out. As I recollect it, he states that Dr. Dieffenderfer and he thinks Mr. Miller, the surveyor, were present, and perhaps some other person, and that the stakes were driven where Dr. Dieffenderfer and Mr. Miller directed them to be driven.

There is testimony also that witnesses saw stakes driven at the lot lines on the lake shore.

Now there is other testimony given, not exactly contradicting that, but to the effect that the other surveyors did not see any stakes at all upon the land. I think Mr. Lathrop and Mr. Stone both say they did not see any stakes that bore any evidence of having been stakes placed there by the original sur-

veyor, Mr. Miller. There were some stakes placed along Lake street, as conceded by Mr. Stone, but those were the only stakes which the plaintiff's surveyors testified they were positive of. Against their testimony is that of Mr. Knuppenburg, Mr. and Mrs. Stearns that stakes were placed there and that the fences were afterwards built upon the line marked by those stakes, and that those fences are still in that same location.] [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1, 2) rulings on evidence, quoting the bill of exceptions; (4) portion of charge as above, quoting it.

*Ernest K. Little*, with him *Bradley W. Lewis*, for appellant.— The parol testimony of L. E. Stearns and others was irrelevant: Fuller v. Weaver, 175 Pa. 182; Borough of Birmingham v. Anderson, 40 Pa. 506; Airey v. Kunkle, 7 Pa. Superior Ct. 112.

Both Stearns and his wife are incompetent as witnesses: Paschall v. Fels, 207 Pa. 71; Karns v. Tanner, 66 Pa. 297; Arthurs v. King, 84 Pa. 525; Chase v. Irwin, 87 Pa. 286; Sutherland v. Ross, 140 Pa. 379; Reiter v. McJunkin, 8 Pa. Superior Ct. 164.

*James Wilson Piatt*, for appellee.—In the event of a discrepancy between the courses and distances called for in the deed and the monuments on the ground, the monuments will control, even though no monuments are called for in the deed: Blasdell v. Bissell, 6 Pa. 258; Ogden v. Porterfield, 34 Pa. 191; Willis v. Swartz, 28 Pa. 413; Dawson v. Mills, 32 Pa. 302; Burkholder v. Markley, 98 Pa. 37; Craft v. Yeaney, 66 Pa. 210; Morse v. Rollins, 121 Pa. 537; Pringle v. Rogers, 193 Pa. 94; Lycoming Mut. Ins. Co. v. Sailer, 67 Pa. 108; Rook v. Greenewald, 22 Pa. Superior Ct. 641; Marcy v. Brock, 207 Pa. 95.

L. E. Stearns and Mrs. L. E. Stearns were competent witnesses: Dicks v. McGraw, 151 Pa. 98; Bank v. Henning, 171 Pa. 399; Strause v. Braunreuter, 4 Pa. Superior Ct. 263; Smith v. Hay, 152 Pa. 377; Spotts's Est., 156 Pa. 281; Horne v. Petty, 192 Pa. 32; Wolf v. Carothers, 3 S. & R. 240.

OPINION BY HENDERSON, J., April 20, 1908:

The plaintiff's case depends upon the true location of the block of lots plotted by T. A. Miller, a surveyor for Dr. Dieffenderfer, who owned the whole tract. He received a deed from Dieffenderfer October 14, 1889, for a lot having a width of fifty feet and a depth of about 166 feet, referred to in the deed as "lot No. 5, on plot or map made by Thomas A. Miller for the grantor hereof." A map proved by a witness to have been made by Thomas A. Miller, showing a division of the land into lots, was offered in evidence and according to it the plaintiff's lot had a course for its north line of south 76° east, and for its south line a course north 76° west. The lot as thus described was shown to cover that portion of the lot occupied by the defendant described in the writ. The plaintiff was, therefore, called upon to establish the identity of the Miller map which he undertook to do by the testimony of witnesses. There was evidence that Miller had made two plots of this land and the one offered in evidence by the plaintiff appears by the indorsement of Miller made thereon to be an "amended plot of a survey" of the lots. It further appears that this plot does not accurately fit the whole piece, there being a call for a triangular piece at the south end having a frontage of fifty feet on the lake which is larger than the actual size by about twenty-three feet. The defendant received a deed from Dieffenderfer dated April 17, 1889, for two lots described as Nos. 3 and 4 on the plot or map made by Thomas A. Miller for the grantor. The south line of this grant is described as a line extending from the northeast corner of lot No. 2 on the plot or map made by Thomas A. Miller in a westerly direction along the north line of lot No. 2 to Lake street. The northern line is described as extending "in an easterly direction along the north line of lot No. 4, 166 feet to a corner at low water mark on Lake Carey." This title, as will be observed, is older than the plaintiff's and the evidence shows that the defendant acquired title before the lots south of her were conveyed. There was not only the evidence that there had been two plots made of the land for Dr. Dieffenderfer, but there was the direct testimony of L. E. Stearns, a witness for the defendant, that

he was acquainted with the map used by the grantor in plot-
ting the land,: that he was present with Dr. Dieffenderfer on
the ground when the lines of the lots were pointed out to him
by Dieffenderfer and that he knew the lines as claimed by the
defendant were perfectly correct. Under the evidence in the
case the court very properly submitted to the jury the ques-
tion whether the plot exhibited by the plaintiff was the plot
referred to in the deed to the defendant. As the defendant
was prior in title she could only be affected by the plot on
which the plaintiff relied when it was shown that that was the
one by which her land was described. According to the evi-
dence of surveyors the plaintiff's plot was inaccurate as to the
triangular portion of land and that may have created doubt
as to the correctness of the other parts of it. The defendant's
contention was that she bought according to monuments on
the ground established by the grantor and pointed out by him
to witnesses as the boundaries of the respective lots. As shown
by this evidence the grantor went onto the ground and caused
oak stakes to be set indicating the corners and the side lines
of the lots sold to the defendant and to the adjoining owners
in accordance, as he claimed, with the Miller survey under
which he was acting and these are the lines to which the re-
spective owners have been holding. The plaintiff, the defend-
ant and other lot owners erected cottages in accordance with
the location of lines as claimed by the defendant. The effect
of a location as claimed by the plaintiff would be to leave a
part of the plaintiff's cottage on the adjoining lot, to cut the
defendant's cottage in two and to take from the owner of the
lot on the north a part of his cottage. Fences were erected
by the owners in accordance with the lines claimed by the
defendant, the plaintiff being one of them. There is abundant
evidence of the existence of the stake lines along which the
fences were located and that the stakes were placed by the
grantor to indicate the lot lines shown by the Miller survey as
he understood it. That it was competent for the defendant
to prove the acts of the grantor designating the location of
the lots which she bought is sustained by many cases. If the
evidence of the defendant is credited the monuments were

on the ground, established by the grantor, clearly showing the divisions made by him and according to which he was selling. These monuments control where there is a discrepancy between them and the courses and distances called for in the deed: Blasdell v. Bissell, 6 Pa. 258; Lodge v. Barnett, 46 Pa. 477; Morse v. Rollins, 121 Pa. 537; Rook v. Greenewald, 22 Pa. Superior Ct. 641. The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by proof of their former existence when the marks or monuments are gone: Marcy v. Brock, 207 Pa. 95. The evidence of L. E. Stearns and his wife definitely locates the defendant's lots by a fence along the line pointed out by Dr. Dieffenderfer, and this evidence, if credited, goes a long way to sustain the defendant's position.

The objection to the competency of L. E. Stearns and his wife as witnesses is not well taken. They had no legal interest in the result of the suit. The interest which disqualifies is a vested interest in the event of a suit, but not in the question involved. It must be such an interest as the judgment in the case would operate upon. The witnesses referred to neither acquire nor lose a right nor incur any responsibility as a result of this action. Their interest in the question might affect their credibility, but not their capacity: Dickson v. McGraw Bros., 151 Pa. 98; Bank v. Henning, 171 Pa. 399. We do not find any reversible errors in the admission of evidence, in the answers to the points or in the charge of the court.

The judgment is affirmed.