# Isenberg, Appellant, v. Huntingdon Millwork & Lumber Co.

*Trusts and trustees—Parol trust—Trust in shares of corporate stock—Fraud—Evidence—Equity.*

A trust in shares of corporate stock may be created by parol.

Where the certificate of stock of a number of shares of a corporation is in the name of a decedent, but really held in his name in trust for another person, the administrator of the decedent commits a fraud if he attempts to use the certificate in violation of the trust, and a court of equity will not aid him in such an attempt.

Where a decedent leaves among his papers a certificate of five shares of stock of a corporation standing in his own name, and his administrator files a bill in equity to compel the corporation to recognize the ownership of the decedent in the certificate and pay the estate a share of the corporate profits, the bill will be dismissed, where two witnesses testify that although the certificate was in the name of the decedent, he merely held the legal title to the shares as a trustee for one of the witnesses, who was the real owner.

In such a case where the witness who was the real owner is called by the plaintiff and gives his testimony as to the actual ownership of the stock while under examination in chief, his competency as a witness and the competency of his testimony cannot thereafter be questioned by the plaintiff; nor can the competency of the other witness be questioned if it appears that although he was a stockholder of the corporation at the time of the transaction by which the trust was created he subsequently after the bill was filed parted in good faith, with his ownership.

Argued Oct. 27, 1915.   Appeal, No. 256, Oct. T., 1915, by plaintiff, from decree of C. P. Huntingdon Co., Sept. T., 1913, No. 194, dismissing bill in equity in case of W. Huyett Isenberg, Administrator of the Estate of J. C. Louder, deceased, v. Huntingdon Millwork & Lumber Co.   Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ.   Affirmed.

Bill in equity for an accounting.

From the record it appeared that the Huntingdon

Mill Work and Lumber Company was incorporated on July 12, 1910, by John S. Bare, John W. Hoffman and J. C. Louder. Bare was the president. On March 17, 1911, Louder died and among his effects was found a certificate for five shares of the capital stock of the lumber company. Louder's administrator filed a bill against the lumber company praying for a receiver, and for an accounting of the profits of the company.

The case was referred to Howard L. Henderson, Esq., as master who found as to the ownership of the certificate in question the following facts:

"The stock was issued to J. C. Louder at the office of the company. There were present at or about the time of its issuance, John S. Bare, president of the company; Nevin Peightal, and J. C. Louder. This stock, at the time it was issued, nor at any time, ever became the property of J. C. Louder, but at the time of its issuance and at the present time, it was and is the property of John S. Bare. John C. Louder was only to get the income, if any, from the stock.

The plaintiff called John S. Bare, president of the company, who was adverse, as the plaintiff's witness. This witness testified: "I had $7,000.00 in my own certificate, $500.00 that I had for Mr. Louder and $500.00 that was issued for T. M. Kurtz, making me owning or controlling $8,000.00 of stock." This evidence is, manifestly, detrimental to the plaintiff, and the plaintiff is bound by it. "In a proceeding in the Orphans' Court when one party calls and swears the other the oath must be taken for true, unless it be clearly disapproved. This is the general rule in equity. I will not say where the burden of proof lay before the accountant was sworn; but it was certainly on the legatees afterwards. It will not do to charge a man with misbehavior, attempt to convict him by means of his own oath, and, when that fails, charge him with perjury into the bargain. He who demands the oath of this adversary must not trifle with it nor treat it as a light matter when he gets it. We do

not understand the auditor to have given the harsh judgment that the accountant was guilty of perjury and if he had we must have disapproved it entirely for there is nothing to justify it." Light's App., 24 Pa. 180.

Nevin Peightal testified: "Mr. Bare says I will give working stock of $500.00 which proceeds will go to keep you in the mill."......"The stock was to be Bare's. All Mr. Louder was to get was the income off this stock. This was my understanding." The master recommended a decree dismissing the bill.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*Harry W. Petriken,* for appellant, cited: Dickson v. McGraw, 151 Pa. 98; Darragh v. Stevenson, 183 Pa. 397; Boyer v. Smith, 3 Watts 449.

*Saml. I. Spyker,* for appellee, cited: Walls v. Walls, 182 Pa. 226; Danley v. Danley, 179 Pa. 170; Watkins v. Hughes, 206 Pa. 526; Pringle v. Pringle, 59 Pa. 281; McClellan v. West, 70 Pa. 183.

OPINION BY RICE, P. J., April 17, 1916:

This suit in equity was based on the plaintiff's allegation that J. C. Louder, the decedent, was the owner at his death of five shares of the capital stock of the defendant corporation, which ownership was evidenced by a certificate, absolute on its face, which was issued in his name and was found amongst his papers after his death. The bill alleged, inter alia, that the company was conducting the business for which it was incorporated, and by its officers refused to account to the plaintiff and to pay over to him the share of profits due the decedent's estate, and prayed: (1) the appointment of a receiver; (2) an accounting to the plaintiff for all money received in the course of its business since the death of J. C. Louder; (3) general relief. The answer of the com-

pany, attested by John S. Bare, its president, and sworn to by him, averred that J. C. Louder was not the owner of the five shares of stock, but held the certificate therefor in trust for John S. Bare; that no money was paid by J. C. Louder for the stock, but it was understood by and between the parties that Louder should hold the shares in his own name for Bare, and that if at any time Louder could pay for the stock, he was to be permitted to do so and upon payment was then to become the owner. The case was referred to a master who found from the evidence that the stock never became the property of J. C. Louder, but at the time of the issuance of the certificate and now was and is the property of John S. Bare, and consequently reported that the bill should be dismissed. The above finding, partly of fact and partly of law, was based on the uncontradicted oral evidence of two witnesses of what took place at the time the certificate was issued. The case is before us by plaintiff's appeal from the court's decree overruling the exceptions to the master's report and dismissing the bill.

A trust—that is, the beneficial title or ownership of personal property of which the legal title is in another—may be created by parol, and shares of corporate stock are not an exception to this general principle. The certificate therefor in the possession of the person in whose name it was issued is prima facie evidence of his ownership of the stock, but it is rebuttable by clear, precise and indubitable proof that it was taken and is held in trust for another who is the real owner. The trust may be express, in which case no particular form of language is necessary, but any words which sufficiently indicate intention will be competent to create a trust: Bisph. Eq. (7th Ed.), Sec. 20. And such conclusion is strengthened where the stock was paid for not by the nominal holder of the certificate, but by the person claiming to be the beneficial owner. It is not essential to the admission of parol evidence to establish the trust that a fraud was originally intended. It is enough that though the parties

acted in mutual good faith at the inception of the trans-
action, an attempt is made to wrest the instrument held
in trust to a purpose not contemplated, or to use it in
violation of the accompanying agreement. It has been
said, "It is as much a fraud to obtain a paper for
one purpose, and to use it for a different and unfair
purpose as to practice falsehood or deceit in its procure-
ment": Rearich v. Swinehart, 11 Pa. 233. See also
White v. Black, 14 Pa. Superior Court 459, and cases
there cited. Applying these principles to the case in
hand, the master was right in saying that if the adminis-
trator of Louder afterward undertook to use the cer-
tificate for a purpose that was not contemplated and
contrary to the agreement of the parties at the time the
certificate was executed, then that would be a fraud;
and, of course, the plaintiff would not be entitled to the
aid of a court of equity in such attempt, even though he
were not actuated by an evil intent. "What is meant by
'indubitable' proof in connection with such cases, is evi-
dence that is not only found to be credible, but of such
weight and directness as to make out the facts beyond a
reasonable doubt; in the very nature of things, that con-
clusive and absolute proof, which results from the pro-
duction of record evidence, or rests on the solution of a
mathematical problem, can never be the effect of the
verbal testimony of witnesses": Boyertown National
Bank v. Hartman, 147 Pa. 558. See also Cullmans v.
Lindsay, 114 Pa. 166; Burt v. Burt, 221 Pa. 171; Sny-
der v. Phillips, 25 Pa. Superior Ct. 648. As already
stated, the master's finding was based on the uncontra-
dicted testimony of two witnesses, and we now add, after
full consideration of the testimony given by them, that
in our judgment it comes up to the standard recognized
in the foregoing cases, and many others dealing with the
same subject.

The remaining question is as to the competency of the
two witnesses, John S. Bare and Nevin Peightel. The
former was called by the plaintiff and gave the testimony

as to his actual ownership of the stock while under examination in chief. Even if it be conceded that the plaintiff was not conclusively bound by his testimony, it is nevertheless too plain for argument that his competency as a witness and the competency of his testimony cannot now be questioned by the party who called him. The principal objection to Peightel, a witness called by defendant, is that he was a stockholder of the defendant company at the time of the conversation sought to be proven as well as at the time when the bill was filed, and this being an action by the administrator of J. C. Louder, a deceased stockholder, he was disqualified under clause (E) Sec. 5 of the Act of May 23, 1887, P. L. 158, which provides, that "any other person whose interest shall be adverse to the said right of such deceased party," shall not be a competent witness to any matter occurring before the death of said party. Obviously the interest must exist at the time when the oath is administered. As to the nature of the interest Chief Justice GIBSON said: "To exclude a witness, it is necessary, that he should have a vested interest, not in the question, but in the event of the suit. It must be an interest, that the judgment in the cause would operate upon; for if by the event, he would neither acquire or lose a right, nor incur a responsibility, which the law recognizes, he is competent. Every other kind of interest goes to credibility": Wolf v. Carothers, 3 S. & R. 240. This doctrine has been approved in construing clause (E) Sec. 5 of the Act of 1887: Dixon v. McGraw, 151 Pa. 98; Horne v. Petty, 192 Pa. 32; Metcalf v. Buck, 36 Pa. Superior Ct. 58. Therefore, whatever may be said of Peightel's ownership of stock at the time of the transaction concerning which he testified, as then vesting in him a disqualifying interest, such disqualification could be removed at any time before he was sworn by an "extinguishment, in good faith, of his interest" (Sec. 6, Act of 1887), and was removed by his sale of his stock before he was called as a witness. See 1 Cook on Corporations

(7th Edition) Sec. 11.   There is no testimony to impeach the bona fides of this sale or to warrant the conclusion that it was conditional.   So far as appears it extinguished his interest as a stockholder, and therefore made him a competent witness, even if he was not so before.

In arriving at the foregoing conclusion the argument of appellant's counsel based on the testimony of John S. Bare as to the existence of a "tentative agreement" has not been overlooked.   But this agreement being in writing, in order to predicate a conclusion that, notwithstanding Peightel's sale of his stock there arose out of the agreement an interest adverse to the decedent which disqualified him to testify in this case, the writing itself ought to be before us so that its precise terms and the parties to it may be known and considered.   It has not been printed, and without it no satisfactory conclusion adverse to Peightel's competency can be drawn from the vague testimony regarding the contents of the paper. In the state of the evidence as presented it seems sufficient to say that Peightel's absolute sale and transfer of his stock for $85.00 a share extinguished his disqualifying interest in the event of the suit, even though there was a collateral undertaking on his part that if the assets of the company should not be sufficient to make the stock worth $85.00 a share he would pay the purchaser the difference.   So far as his liability under such collateral agreement is concerned it would make no difference whether the ownership of the five shares of stock in suit was in the estate of J. C. Louder or in John S. Bare.

The assignments of error are overruled and the decree is affirmed; the cost of this appeal to be paid by the appellant

The opinion in the above mentioned case was written by Judge RICE, to whom the case was duly assigned for that purpose during his term of office, and is now adopted as the opinion of the court.

BY THE COURT.