CHRISTIAN REARICH *v.* JOHN SWINEHART and CHRISTIAN GROSS, Executors, &c., of HENRY REARICH, deceased.

1. When an attempt is made to use a written instrument in violation of an agreement accompanying its execution, to which attempt no moral guilt can be imputed, a legal delinquency attaches to the attempted abuse of the writing, sufficient to subject it to the influence of oral evidence.

2. Posterior acts of the party, whose representatives attempt so to use such written instrument, are of themselves incompetent to affect the agreement between the parties, or to change the medium of proof. When such acts consisted of a will, and of a deed, the declarations of the party relative to them will be received, not as explanatory of the deed, or elucidatory of the will, but as corroborative of the agreement.

3. When notice of special matter is required to be given, and evidence of such matter is objected to on trial on the ground that notice of it has not been given, that objection should be specifically made, and noted in the court below, or it will not be sustained on error.

4. Executors may tender a deed, executed by their testator in his lifetime, and directed by him in his will to be delivered after his death.

ERROR to the Common Pleas of Union.

This was an action of covenant, which was brought by the executors

of Henry Rearich, deceased, against Christian Rearich, and was founded upon articles of agreement, executed between the testator and the defendant, who stood to each other in the relation of father and son.    The pleas were covenants performed and release.    By these articles, dated 10th March, 1832, Henry Rearich covenanted, in consideration of so much per acre, to convey certain land on or before the 1st of April ensuing, to Christian Rearich, and Christian covenanted with Henry to "pay the whole amount what arises from said tract of land, one year after the death of said Henry, and no interest shall be calculated on said money."

Upon the trial, the plaintiffs showed the title to the land mentioned in the articles to be in their testator; that he left a widow who had released her right to dower in the same.    They then offered the will of their testator, dated 7th January, 1845, proved 19th August, 1845, in connexion with a deed from their testator to Christian Rearich, dated and acknowledged 7th January, 1845, and also with a release of dower from the widow, to be followed with proof that the deed and release were tendered to Christian before suit brought, and that he took possession in 1832.    The will offered contained the following provisions:—

"As for my sons, Henry, Conrad, and Christian, they have been provided for in the purchases of lands from me, under articles of agreement which I wish to have carried out and fulfilled on their, as well as on my part, by my executors." . . . . . . . . . . . . . .

"Deeds bearing even date herewith have been duly executed and acknowledged to said Henry Rearich, Jr., Conrad, and Christian Rearich, for the several tracts of land on which they now reside, and which they severally purchased from me some years ago, and prior to my last marriage; which deeds are to be delivered at my death, if not before."

To this offer the defendant objected that the executors, plaintiffs, had no authority to tender this deed and release.    The court (WILSON, President) admitting the evidence, the defendant took his *first* bill of exceptions.

Plaintiffs then proved a tender of the deed and release at one time by one of the executors; of the deed without the release at a previous time, by one of the executors in the presence of the other; and also the quantity of the land.

The defendant called Conrad Rearich, and offered to prove by him that he was present when this agreement, which was given in evidence, was made between his father and his brother Christian; that it was agreed that Christian should have this land as his portion

of his father's estate, but that the title and papers were to be kept and arranged in such a manner, that Henry Rearich, if he should be in want, could resort to the land in the hands of his son, for his own support, but that he was not to pay for it unless the old man himself should come into necessitous circumstances in life. That the proposition was made by his father and assented to by Christian; that they talked of the extent of the old man's property, and concluded that the land embraced in this agreement would be about equal to Christian's share of his father's estate, upon an equal distribution made among all the children of Henry Rearich.

Plaintiffs object:—1. Because the agreement is in writing.

2. Because the plaintiffs' testator disposed of his estate by will.

3. Because such evidence would come within the statute of frauds and perjuries.

4. Because it is not admissible under the pleadings.

5. Because irrelevant.

PER CURIAM.—The evidence offered is not to prove fraud or mistake, or that anything was left out of the article by the agreement of the parties. It would, as it appears to us, change the whole agreement, and make a new one between the parties. It would be contrary to the deed and will executed by the testator, and in direct contradiction of it.

Objections sustained, and defendant took his *second* bill of exceptions.

Defendant further offered to prove by a witness, that on the 7th day of January, 1845, he drew the will and deed already given in evidence by the plaintiffs, for Henry Rearich. That at the time he drew the will and the deed, Henry Rearich told him that his son Christian was to have the land embraced in that deed, as his portion or share of his estate, and that he was not to be called upon for the payment of the purchase-money, but was to have the land free and clear at his death.

Plaintiffs object:—1. The written will explains what was done with it.

2. That this evidence contradicts the will.

3. That if such declarations were made, they were not binding.

4. The evidence offered is irrelevant and inadmissible.

Objections sustained, and defendant took his *third* bill of exceptions.

Defendant further offered to prove, that Henry Rearich frequently, both before and after the making of the deed and will, declared that he had given this land to his son Christian as his

portion; that he was not to pay the amount in the agreement, or any other sum for it.

Objected to for the same reasons as above.

Objections sustained, and defendant took his *fourth* bill of exceptions.

Defendant then offered to prove, that $8 per acre was the full value of the land at the time Henry Rearich sold it to Christian, and that it was so considered by Henry Rearich himself.

Plaintiffs object, 1. That the agreement shows the amount defendant was to pay. 2. Irrelevant and inadmissible.

Objections sustained, and defendant took his *fifth* bill of exceptions.

Defendant then offered the evidence of Conrad Rearich, before offered and rejected, together with the evidence offered in the previous bills. Offered for the purpose of corroboration, and to show that the release of the debt is in accordance with the previous agreement and understanding of the parties, before the written contract was entered into and afterwards.

Objected, that it is irrelevant, and for the reasons before given.

Objections sustained, and defendant took his *sixth* bill of exceptions.

The court, after rejecting these offers of the defendant, directed a verdict for the plaintiffs for the amount of the purchase-money, with interest from one year after the testator's death. Verdict accordingly.

In this court the plaintiff in error assigned the following errors:—

1. The court erred in deciding that the executors had power under the will of Henry Rearich to tender the deed without the order of the Orphans' Court.

2. In deciding that the tender of the deed by one executor was sufficient.

3. The court erred in rejecting the evidence contained in the defendant's 2d, 3d, 4th, and 5th bills of exceptions.

*Casey* and *Merrill*, for plaintiff in error.—1. As to the admission of the parol testimony offered: It may be given to raise a resulting trust: Hoge *v.* Hoge, 1 W. 213. Of the ademption of a legacy: Bailey *v.* Snyder, 1 Pa. Rep. 126. As to giving meaning to words of a will: 5 Ves. 247; 7 Bac. Abr. 241; Ib. 367; 2 Stark. Ev. 765; Lessee of Findlay *v.* Riddle, 3 Binn. 149; Lynn *v.* Downes, 1 Y. 518. Misrepresentation of the effect of a written agreement, at execution, must be made good: Tyson *v.* Passmore, 2 Barr, 124.

In Worral v. Fisher, 5 W. & S. 483, the misrepresentations were made long before the execution, by letter.

Under plea of payment may prove that at execution, plaintiff promised to cancel the bond on an event which has since happened : Hartzell v. Reiss, 1 Binn. 289; Stubbs v. King, 14 S. & R. 206. Miller v. Henderson, 10 S. & R. 290. What was said when bargain was made, and article drawing, may be proved : Ballinger v. Eckert, 16 S. & R. 424; Hayden v. Mentzer, 10 S. & R. 329; Campbell v. M'Clenachan, 6 S. & R. 171. Parol evidence always admitted in case of fraud or mistake : Christ v. Dilffenbach, 1 S. & R. 464; Lyon v. Bank, 14 S. & R. 283.

Though there may be no fraud in the inception, fraudulent use of the instrument afterwards, opens the door to parol evidence : Oliver v. Oliver, 4 R. 141; Morrison v. Morrison, 6 W. & S. 516; Parke v. Chadwick, 8 W. & S. 98; Renshaw v. Gans, 7 Barr, 117.

2. As to the parol release: Wentz v. Dehaven, 1 S. & R. 312; Powell, Mortgages, 53, 3d ed.; 3 Eq. C. Ab. 591; 2 Burr. 979; Coe v. Hutton, 1 S. & R. 408; Eden v. Smyth, 5 Vesey, 41; Aston v. Pye, 5 Vesey, 350, in note; Zeigler v. Eckert, 7 Barr, 1; Whitehill v. Wilson, 3 Pa. Rep. 405.

3. The will gives no authority to executor to deliver the deed; he should have applied to the court under § 12, act 24 Feb. 1834. If there was a power in the will to do so, it was a joint power, and could not be exercised by one : 3 Madd. Ch. 361; Hall v. Canal Commissioners, 9 Watts, 466; Johnson v. Bingham, 9 W. & S. 56.

*Slenker* and *Miller*, contrà.—The evidence as to what was said at making the agreement and will is inadmissible, because it would change the intention of the testator. Nothing but fraud or mistake can be admitted: Stub v. Stub, 3 Barr, 255: Campbell's Estate, 7 Barr, 100; Comfort v. Mather, 2 W. & S. 450; Iddings v. Iddings, 7 S. & R. 111. But there had been no notice of this defence, and the rule of court is, that "no special matter, not strictly admissible under the pleadings, shall be admitted in evidence, unless notice thereof shall have been given in writing to the opposite party or his attorney, at least thirty days before the trial :" Erwin v. Leibert, 5 W. & S. 103.

The executors had the power to make tender of the deed : Smith v. Smith, 5 Barr, 257; Boshart v. Evans, 5 Wh. 561.

The deed was tendered by both, though a tender by one would have been good: Moody v. Vandyke, 4 Binn. 49 ; 2 Penna. Bl. 510;

1 Atkyn. 460 ; Zebach *v.* Smitz, 3 Binn. 69 ; Bowers *v.* Seeger, 8 W. & S. 222 : Lazarus *v.* Folmer, 4 W. & S. 9 ; Asay *v.* Hoover, 5 Barr, 36 ; 4 Bac. Ab. 38, Am. ed.

The opinion of this court was delivered by

BELL, J.—In Pennsylvania, perhaps, the door has been opened wider than elsewhere for the admission of parol proof to reform, modify, and even to extinguish a written instrument, in cases of fraud, mistake, or trust. Of the wisdom of this liberality, or it may be laxity, much diversity of opinion has been entertained and expressed. But it is now too late to question the doctrine, since the long series of cases from Hurst *v.* Kirkbride, down to the recent determination in Renshaw *v.* Gans, 7 Barr, 117, with very little wavering, establish the rule, that with us, oral proof of the acts and declarations of the parties at or about the time of the execution of the writing, is receivable to affect it, unless, indeed, these be in direct and express contradiction of the instrument. An instance of this exception is afforded by Keagy *v.* Umberger, 10 S. & R. 339, where, by the terms of a written assignment, the assignor declined to guaranty the solvency of the obligor, it was held that parol evidence was inadmissible to show an undertaking to guaranty, there being no allegation of a mistake or omission by the scrivener, though, as was afterwards said in Lyon *v.* The Huntingdon Bank, had deceit been averred, the case would have been different. In Bollinger *v.* Eckert, 16 S. & R. 424, it was ruled, that whatever material to the contract was agreed to when the bargain was concluded, and the article in course of preparation, may, if not expressed in the article, be proved by parol, unless, perhaps, it is expressly contrary to the writing. But in the instance now in hand, it is unnecessary to speculate upon the extent to which the rule has been carried, or to invoke the aid of the principle in its general application, since our books furnish us with determinations of undisputed authority, that must be accepted as ruling the question here presented. These cases ascertain that a deed or other instrument, absolute and unconditional upon its face, may be controlled or otherwise defeated by a contemporaneous verbal understanding, or a series of facts constituting an adverse equity, where a recognition of these is necessary to defeat fraud. Of this class is Hartzel *v.* Reiss, 1 Binn. 289, where a defendant was permitted to answer in bar of a *scire facias sur* judgment, that when he executed the bond and warrant of attorney, the plaintiff agreed to cancel it, upon the performance of a collateral act by the defendant, which had been performed since the entry of

the judgment. To the same effect is Parke *v.* Chadwick, 8 W. & S. 98, in which an absolute conveyance was overturned by oral proof, that it was given and accepted as a security for the payment of a debt, and to be surrendered when that was discharged. Miller *v.* Henderson, 10 S. & R. 290, the soundness of which has been repeatedly recognised, touches still more nearly our case. There three single bills executed by the defendant as the surety for one Patton, were disproved as evidences of debt by testimony showing that their execution and delivery by the defendant was induced by the declaration of the plaintiff that the signature of the former was required as mere form, and that he should never be called on for payment. " It is objected," said Chief Justice Tilghman, " that no adjudged case goes so far as the present; because here the evidence is in total destruction of the defendant's obligation. But the principle is the same, whether the obligation be destroyed in whole or in part. In either case, it is broken in upon. The destruction of a written instrument by parol evidence may seem dangerous, and in fact it is so. But the community would be in a still worse condition, if it were established as an inflexible rule, that when a man's hand was once got to an instrument, no matter by what means, the door should be shut against all inquiry."

This was followed by Lyon *v.* The Huntingdon Bank, 12 S. & R. 283, than which it would be difficult to produce an adjudication more strongly illustrative of the doctrine we are considering, or one furnishing a clearer light to guide us to a correct conclusion. It was an action of debt brought upon a bill single, executed in satisfaction of a prior promissory note, drawn by the defendant in favour of the plaintiff for $10,000. Though several years had elapsed between the first and last transaction, the defendant was permitted to prove in bar of the action, that when the first note was given, certain securities held by the defendant, were assigned to the plaintiff, under the express stipulation and agreement that those should be looked to as the source of payment, and that the defendant was in no event to be' held liable upon his notes. In delivering the opinion of the court, the late Chief Justice, after stating the general rule prohibitory of the introduction of parol proof to control or alter a written agreement, observed, " but the evidence offered in this case does not fall within that rule. It was not pretended that there was anything wrong in the single bill, or that any alteration whatsoever should be made in it. The object of the evidence was to show that it was subject to an agreement, made long before its date;" and he then proceeded to make it manifest that, under

such circumstances, a chancellor would grant relief upon the ground that the attempt to enforce payment was fraudulent and against conscience. As authority, favouring the receipt of parol testimony to prevent fraud, it goes further than those cases which confine such testimony to what occurred at the execution of the written instrument; but all proceed upon the same principle, forbidding the fraudulent application of a rule in itself intended to prevent fraud.

To the cases already cited may, I think, fairly be added Hain v. Bell's Administrator, 14 S. & R. 159, which recognises fully the power of a parol understanding or agreement to defeat, in whole or in part, a specialty for the payment of money, where the understanding was the inducement leading to the execution of the specialty.

Nor is it essential to the admission of parol evidence that a fraud was originally intended. It is enough that, though the parties acted in mutual good faith at the inception of the transaction, an attempt is made to wrest the instrument to a purpose not contemplated, or use it in violation of the accompanying agreement. It is as much a fraud to obtain a paper for one purpose, and use it for a different and unfair purpose, as to practise falsehood or deceit in its procurement. The primary honesty of purpose but adds to the moral turpitude of the subsequent effort to escape from it; or when moral guilt cannot be imputed, as perhaps in our case, a legal delinquency attaches upon an attempted abuse of the writing, sufficient to subject it to the influence of the oral evidence : Lyon v. The Bank, suprà; Oliver v. Oliver, 4 R. 141; Parke v. Chadwick, 8 W. & S. suprà; Renshaw v. Gans, suprà. What is the contest before us ? In answering this question, we must accept the offers made by the defendant below as founded in truth, and capable of proof. These present us a case in which a father, with a view to the division of his estate, induces his son to enter into a contract for the purchase of a piece of land at a certain price, but subject to an express stipulation, that unless the future necessity of the father should compel it, no part of the purchase-money was to be called for, and that in the event of the father dying without being compelled to make the call, the land was to be held by the son, free of claim, as his purpart of the ancestor's estate. The chance of thus escaping payment was the inducement for assuming the possible burden of the contract; but that possibility having passed, the effort of the executors is to convert the agreement into an instrument of profit, for the benefit of the devisees named in the

father's will, irrespective of the rights of the son under it. This is a fraud upon the alleged contemporaneous agreement, sufficient, under the principles reviewed, to open the way for the rejected proof. But the court below seems to have been misled by the idea that there was something in the deed and will made by the testator which forbade its introduction. I confess that, looking to the original written agreement, the deed executed, and the will, I am inclined to the opinion that they rather favour than repel the allegation of an oral arrangement. But were this otherwise, nothing contained in either of the latter instruments can be allowed to exclude the offered proof, for the simple reason that the posterior acts of the testator are of themselves incompetent, either to affect the original arrangement between the father and the son, or to change the medium of proof.

What has been said, we think, makes it clear the evidence mentioned in the first bill of exceptions ought to have been received. But this necessarily draws·with it all the subsequent declarations of the testator on the same subject, not as explanatory of the deed, or elucidating the meaning of the will, but as corroborative of the original agreement. Having first proved that, there remains no technical difficulty barring the introduction of subsequent recognitions of it, to which frequent repetitions might lend a powerful effect. This course of remark is not, however, intended to make us oblivious of the danger attendant upon the introduction of oral evidence in cases like the present. Of this we are fully sensible; and juries, upon whom devolve the duty and responsibility of weighing its value and estimating the degree of credit to which it may be entitled, should be warned against the indulgence of easy credulity, and instructed that the overthrow or modification of a solemn written agreement can only be safely ventured under clear, distinct, and entirely satisfactory proofs. Yet, to judge of this belongs to them; we can but declare the competency of the evidence; it is theirs to award the credit due to it.

But it is urged, the rejected matter was inadmissible under the pleadings in the cause.

The plea is, covenants performed. Under this plea, ever since Bender *v.* Fromberger, 4 D. 439, upon notice to the plaintiff, the defendant may give anything in evidence which he might have pleaded.

But, certainly, under the written rules of the Common Pleas of Union County, notice of the special line of defence assumed below was requisite; and, had this objection been specifically made on

the trial, it would have been difficult, if not impossible, to answer it. But we never sustain the objection in this court, unless it clearly appears to have been taken below; for otherwise, it is impossible it should appear of record, whether there was notice or not, since this is never pleaded, nor otherwise made apparent, unless specially called for.

Here the objection below may or may not have pointed to want of notice. It is general, and may have referred to the inaptitude of the plea, without reference to notice. Certain it is, the decision of the court did not proceed upon any alleged want of notice, and it is impossible for us to say, with safety, *that* ground was taken. It is a sufficient answer that it does not so distinctly appear of record. This has been more than once decided.

It follows that the Court of Common Pleas erred in rejecting the offers mentioned in the 2d, 3d, 4th, and 6th bills of exception. The same is true of the 5th bill, for this is, also, corroborative of the defence. It may, in the end, weigh but little in determining the judgment, but it is certainly relevant, especially in connexion with the terms of the will.

The evidence of tender of the deed, executed by the testator in his lifetime, was rightly received. The objection made was that the executors had no authority to make the tender. But this is a misapprehension. The testator expressly directs the agreements between his three sons, Henry, Conrad, and Christian, to be carried into effect, and on his part, by his executors. This could only be done by tender of the deeds, noticed in the will as having been executed, one of which was the deed in question. The executors had, therefore, express authority to make the tender, and this sufficiently appears to have been done by both of them. The subsequent offer of the widow's release, by one of them alone, does not affect the prior tender. I do not, however, wish to be understood as ruling, that a tender by one of the executors, with the approbation of the other, would have been insufficient.

Judgment reversed, and a *venire de novo* awarded.