[No. 17291. Department One. January 19, 1923.]

## M. M. DICKSON, *Respondent*, v. BERT C. PROTZMAN, *Appellant*.[1]

EVIDENCE (150)—PAROL EVIDENCE—BILLS AND NOTES—CONDITIONS PRECEDENT. Parol evidence is admissible to show a mutual agreement, precedent to delivery to the payee, that a promissory note, absolute in form, should not be transferred or considered a valid obligation or collectible, until after payment of another note given by a third person.

BILLS AND NOTES (137)—ACTIONS—DEFENSES—NATURE AND EXTENT OF LIABILITY—EVIDENCE—SUFFICIENCY. Findings that there was no precedent understanding that a promissory note, absolute in form, was not to be considered a valid obligation until the payment of a note given to the maker by a third person, on the same day, are not sustained, where the clear preponderance of the evidence is to the effect that it was given as a memorandum to show the payee's interest in the note of the third person, the note contained an endorsement that it was not to be transferred, and the payee took an active interest in the attempt to collect the note of the third person.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 14, 1922, upon findings in favor of the plaintiff, in an action on a promissory note, tried to the court. Reversed.

*Ferris & Ferris,* for appellant.

*W. H. Plummer* and *J. P. Murphy,* for respondent.

[1] Reported in 212 Pac. 249.

FULLERTON, J.—The respondent, M. M. Dickson, brought this action to recover on an instrument in the form of a promissory note for $3,240, signed by appellant, Bert C. Protzman. Appellant pleaded in his answer, by way of an affirmative defense, that when the instrument in question was made, it was mutually understood between the parties that it should not be considered a valid obligation or collectible until appellant had collected a certain note from a third person.

Upon these issues a trial was had, and the court below found as a matter of law:

"(1) That the allegations, matters and things contained in defendant's answer, pleaded by way of affirmative defense, is not a legal defense in law, and even if true, would not constitute a defense.

"(2) That, even though said matters and things pleaded in defendant's answer constituted a legal defense, he has failed to sustain the same by preponderance of evidence."

Whereupon judgment was entered for the full amount of the note. From that judgment, Protzman appealed.

The circumstances surrounding the making of the note are rather involved, but the following facts are undisputed. At the time of the making of the note, the respondent held two notes of C. H. Billings, each in the amount of $1,620. The appellant held notes of Mr. Billings which, together with the two notes belonging to respondent, aggregated $13,427.55. After some dickering, involving the giving of security, these notes were returned to Billings, who executed a new note to appellant for the full amount, $13,427.55.

At that time, or soon thereafter, there being some conflict in the testimony, appellant signed and gave to respondent the instrument upon which this action is

based. Respondent's position, concisely stated, is that this was a note given in payment of the Billings' notes turned over to appellant and was to have been paid when due. Appellant, however, in his affirmative defense to this action, took the position squarely that this instrument was given purely as a memorandum to represent the interest of respondent in the new Billings' note, referred to in the record and briefs as the "big note," and was not to become a note collectible against appellant, nor have any value whatever, until the note for $13,427.55, above referred to, had been paid by Billings, or if it became necessary to bring a suit on the Billings' note, not until a judgment had been rendered in such action and the judgment paid.

The first question, therefore, to be decided is whether the facts stated in the affirmative defense, if true, would constitute a defense to this action. Appellant contends that there has been no legal delivery of the note, and bases his defense on a conditional delivery, while respondent argues that, by the affirmative defense, the appellant is attempting by parol evidence to vary the terms of a written contract by limiting his liability and fixing a collateral source of payment.

The rule in this state is that parol evidence is admissible to show that a note, absolute in form, though manually delivered to the payee, is not to become a binding obligation except upon the happening of a certain event. *Ewell v. Turney*, 39 Wash. 615, 81 Pac. 1047; *Seattle Nat. Bank v. Becker*, 74 Wash. 431, 133 Pac. 613; *Gwinn v. Ford*, 85 Wash. 571, 148 Pac. 891; *Post v. Tamm*, 91 Wash. 504, 158 Pac. 91.

In the case of *Post v. Tamm, supra,* the court said:

"The rule which permits oral testimony for the purpose of showing that a note had never been delivered, and was not intended to take effect until the happening of a certain event, is not here applicable. That

rule relates to a condition precedent. In the absence of the condition being performed, there is no valid delivery of the note, and hence no obligation as between the parties."

Under this rule the condition precedent must be a condition precedent to the contract becoming a valid obligation and not merely precedent to its payment, to render parol evidence admissible. In other words, the condition must go to the delivery and not to the obligation. In adopting this rule, this court has followed the overwhelming weight of authority, as may be seen by an examination of *Vincent v. Russell,* 101 Ore. 672, 201 Pac. 433, and the cases therein cited and discussed. The case of *Fidelity Title Guaranty Co. v. Ruby,* 16 Ariz. 75, 141 Pac. 117, is on all fours with the case at bar, and in passing upon the question the court says:

"The answer under consideration brings this case squarely within the rule stated, and the evidence shows that there never was any complete, final delivery of the writing as the promissory note of the maker, Ruby, payable at all events and according to its terms, for the reason it was made as a mere memorandum of the balance Asencio was entitled to receive when the Gordon note was paid to Ruby, and was delivered as such with the understanding of the parties that it should be payable when the Gordon note was paid, and in no other event. So considered, the court was entirely correct in receiving parol evidence in support of this defense. The contention of appellant that the court erred in admitting the evidence tending to show the parties agreed that this note was not payable until the Gordon note was paid cannot be sustained."

The allegations of the affirmative defense pleaded in the answer bring this case clearly within the rule.

Whether or not appellant has established the facts pleaded in his answer by a clear preponderance of the evidence, as required in a case of this kind, presents

a more serious question and necessitates an examination of the evidence.

In the first place, the note itself contains evidence of a conditional delivery in the endorsement reading: "It is mutually agreed by both parties that this note is not to be transferred," and the further endorsement on its face, "Not transferable." The appellant declares emphatically that this endorsement was placed upon the instrument by him because the note was given purely as a memorandum. Respondent states as unequivocally that, at the time this endorsement was written, appellant explained that he did not want the note transferred, because "it might interfere in some way" in the Billings' case.

The appellant further testified that respondent tried to sell the Billings' notes to him for $2,500, and that he refused to buy. Later he states respondent suggested that, if appellant would take the notes, he thought he could get security from Billings covering the entire amount of the notes, and that it was pursuant to this suggestion that the arrangements were made.

Mr. Ferris, attorney for appellant in the Billings' case, testified that the first time the note upon which this action was based was brought to his attention was a day or so before the trial in the Billings' case; that at that time, some misunderstanding had arisen between appellant and respondent as to this particular note; that, at the suggestion of Mr. Ferris, they attempted to settle the matter; and at that time Protzman (appellant) took the same position as he is taking at this time. To quote Mr. Ferris:

"At that time Mr. Protzman told exactly the same story with reference to that note as he told here on the witness stand, that he took the note over for the purpose of collecting that note with his note; that it

was understood between him and Mr. Dickson that he would not pay Dickson until he got the money from Billings and that was the reason he called specific attention to the fact that this writing was on the bottom of the note, that was the reason it was put there. Mr. Dickson said it was not his understanding, that was not the way he understood it, but said, 'If that is the way you understand it, that is all right; we will let it go just that way,' and he says, 'Here is the note; take it,' giving it to me. And I said, 'I don't want to hold the note. If you want to leave it here, leave it with my brother.' I supposed that was the end of it."

The note was left in the law office of Mr. Ferris for some weeks after that, and later, at respondent's request, was returned to him.

The activity of respondent in the Billings' case, in which he was no longer a party, a trip he made to Davenport to look up records, and his visit to Harrington with appellant, would indicate that he continued to consider himself as interested in the collection of the big note. That he did so interest himself is undisputed, as is the fact that on a number of occasions he called upon and consulted with appellant's attorneys as to the conduct of that litigation.

Respondent explains that his interest in the Billings' litigation was entirely from his friendship for appellant, who, he says, was sick and in the hospital part of the time. He stated directly: "The only interest I had in the world was a friendly interest with Mr. Protzman." It appears from his testimony, however, that he felt that the appellant's attorneys were wrong in not proceeding to foreclose the chattel mortgage he had been of assistance in securing, rather than by proceeding with an attachment proceeding.

Respondent, in his testimony, flatly contradicts appellant on all the essentials concerning this transaction. A witness, Tierney, testified that he heard a con-

versation between the parties which would bear out respondent's story. However, his evidence is not at all clear.

Simmered down, then, to support appellant, we have his testimony, corroborated in part by his attorney, the note itself, evidencing by endorsement on its face a conditional delivery; and the activity of respondent in the Billings' case after, according to his statement, he had parted with all interest in that litigation. The fact, too, that the note herein matured on the same date as the Billings' note may be considered.

To support the respondent, we have his testimony, supported in one particular by the testimony of Tierney, which, as we have seen, is not entirely clear. We also have the evidence of the payment of $150 by appellant on July 27, 1921. Respondent claims this was a payment on the note. Appellant denies this. The payment was endorsed on the back of the note, whether in appellant's presence or not is disputed. This payment was made after judgment had been entered in the Billings' case.

The conduct of respondent relative to the Billings' case seems to us to evidence very clearly some interest, other than a matter of friendly interest, in the outcome of that case, and in that respect corroborates the evidence of appellant.

It is true that this court is reluctant to interfere with a ruling of the lower court based solely upon the manner in which it resolved disputed matters of fact. It may be, however, that the trial court's opinion that the affirmative defense was not a legal defense to this action unconsciously prevented him from giving the evidence supporting it the weight to which it was entitled. While such a defense must be proven by a clear preponderance of evidence, by the very nature of such cases there is, and always will be, a direct

contradiction by one party of the other. We cannot escape the conclusion in this case that the appellant met the burden the law places upon him.

Reversed and remanded with instructions to dismiss.

PARKER, MITCHELL, and BRIDGES, JJ., concur.