## WISE v. BOYD et al.    (No. 2377.)*

(Court of Civil Appeals of Texas. Amarillo. Nov. 12, 1924. Rehearing Denied Dec. 31, 1924.)

**1. Bills and notes ⬤⟹489(7)—Indorsee .held entitled to recover on note without establishing alleged ownership of all beneficial interest.**

Under Negotiable Instruments Act, §§ 51, 191 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—51, 6001—191), indorsee of note, on proof of contemporaneous agreement that he was to collect it and have privilege of borrowing money collected from payee, could recover thereon subject to defenses against payee, though petition, alleging plaintiff's ownership of note by acquisition from payee, in due course, for valuable consideration before maturity, be construed as affirming ownership of all beneficial interest therein; sufficient allegations being established without variance to entitle him to sue.

**2. Bills and notes ⬤⟹139(1)—Extension of time of payment by renewal note, signed by one signing original note without consideration, held sufficient consideration to bind him.**

Extension of time of payment by renewal note, signed by one signing original note after transaction between maker and payee was closed, held sufficient consideration to bind him,

though he did not know he was not liable on original note, in absence of claim that misunderstanding was induced by any act of payee.

**3. Evidence ⬤⟹444(6)—Parol agreement that signer should not be liable on note except in case of maker's death, held inadmissible.**

Evidence of parol agreement that signer of note, containing absolute promise to pay at stated date, should not be liable thereon, except in case of maker's death, held inadmissible, such agreement not evidencing conditional delivery within Negotiable Instruments Act, § 16 (Vernon's Ann. Civ. St. Supp. 1922, art. 6001—16), but merely contradicting terms of writing as to payment.

**4. Evidence ⬤⟹441(1)—Parol agreement contradicting written agreement inadmissible, though made without intent to perform.**

Rule that promise to be performed in future, made without intent to perform, may sustain charge of fraud, cannot apply to oral agreement contradicting terms of written agreement.

On Motion for Rehearing.

**5. Principal and surety ⬤⟹161—Evidence held not to show delivery of note on condition that it should not be effective as against surety until maker's death.**

Surety's testimony held to show delivery of note to transfer property therein, with understanding that if maker died surety would pay it, rather than delivery on condition that it should not be complete or effective against surety until maker's death.

Hall, C. J., dissenting.

Appeal from District Court, Wilbarger County; J. V. Leak, Judge.

Action by J. A. Wise against Rex Boyd and B. S. King. From judgment for defendant King, plaintiff appeals. Reversed and rendered.

Yarbrough & Tipton, of Electra, Cook, Cook & Cole, of Vernon, and Weeks, Morrow & Francis, of Wichita Falls, for appellant.

Bonner & Storey, of Vernon, and Turner & Dooley, of Amarillo, for appellees.

BOYCE, J. J. A. Wise brought this suit against Rex Boyd and B. S. King on a note executed by said defendants, payable to I. G. Showers, and by him indorsed and transferred to plaintiff. Boyd did not answer. The defendant King contested recovery as against him on grounds hereinafter stated. The trial judge directed a verdict against Boyd, but in favor of defendant King, and judgment was rendered accordingly.

It is conceded that if the pleading and evidence made an issue as to King's liability on the note, a matter which we discuss later, yet the peremptory instruction could not be sustained on such ground, because the evidence thereon was conflicting. The instruction, appellee suggests, was given on the the-

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 18, 1925.

ory that the evidence failed to sustain plaintiff's allegation of ownership of the note; and we will dispose of this question first:

[1] The plaintiff, in his petition, after setting up the execution of the note, alleged "that said note is now owned and held by the plaintiff herein, J. A. Wise, he having acquired same from the said I. G. Showers in due course, for a valuable consideration, and before maturity, and the said J. A. Wise has the right to bring and prosecute said suit." Both Showers and Wise testified at the trial as to the indorsement and delivery of the note to Wise; the substance of their testimony is that it was agreed at such time that Wise was to collect the note, and then have the privilege of borrowing the money so collected from Showers for one year. That Wise would have the right under these facts, subject to any defenses as against Showers, to maintain the suit and recover on the note is not open to question. McMillan v. Croft, 2 Tex. 397; Brown v. Chenoworth, 51 Tex. 469; Jackson v. Fawlkes (Tex. Sup.) 20 S. W. 136; Gray v. Altman (Tex. Civ. App.) 149 S. W. 760; Negotiable Instruments Act, §§ 51, 191 (Vernon's Texas Statutes, 1922 Supplement, arts. 6001—51, 6001—191). The appellee concedes this, but insists that under the pleading plaintiff must have shown that he was the absolute beneficial as well as the legal owner of the note, otherwise, there is a variance between the allegata and probata. If it be that the allegations should be construed as an affirmance of ownership of all beneficial interest in the note, yet we are of the opinion that this should not defeat plaintiff's right to recover on the pleading. Sufficient of the allegations of the pleading are established without variance to entitle him to sue on the note. The fact that he alleged more than was necessary, and failed to establish these surplus allegations, does not preclude recovery. Collins v. Chipman, 41 Tex. Civ. App. 563, 95 S. W. 667 (13); Ellerd v. Murray (Tex. Civ. App.) 247 S. W. 636 (12–14).

This conclusion would result, in any event, in the reversal of the judgment; but in order to determine whether judgment should be here rendered for appellant, it becomes necessary to consider the pleading of the defendant King, and the evidence offered in support thereof, to ascertain whether a good defense against liability on the note is presented thereby.

King pleaded that Showers sold certain cattle to Rex Boyd; that the cattle were delivered and a note signed by Rex Boyd accepted in payment; that afterwards, without prior agreement therefor at the time of closing said cattle transaction, and without other consideration to the defendant King, or to Boyd, the said King signed the original note as an accommodation surety; that at such time Showers stated "that he would not hold said King liable on said note, nor expect him to pay it, and would not sue him or try to hold him liable thereon, except in the event the said Boyd should die before the maturity of the note." That he was induced by this promise to sign said note, and but for such promise would not have signed it; "that said representations were not true, but were false and were fraudulently made with the intention of the said Showers at the time, not to carry them out." That when such original note became due, he signed a renewal, the note sued on, with Boyd, "still relying on said fraudulent representations of the said Showers, and, * * * supposing at the time he signed the renewal note that he was liable on the original note and not knowing that he had a valid defense thereto." King, in his answer, also denied that plaintiff is an innocent purchaser of the note.

There was a conflict in the evidence as to whether the original note was signed by King before or after the delivery of the cattle to Boyd, and as a part of the agreement for the sale thereof. The testimony was also sharply conflicting as to whether there was an oral understanding when the first note was signed that King was not to be liable on it except on the condition alleged by him. When the first note became due, payment was demanded of King; he testified that he then called Showers' attention to the prior oral understanding as to his liability, though Showers denies this; there is no evidence that Showers, at the time, conceded that such an oral agreement was made, King's testimony being to the effect that Showers neither affirmed nor denied it. King said that when he signed and executed the note, "he still expected Showers to live up to his contract," and would not have signed it otherwise. He further testified:

"If I had been informed at that time that I was not legally liable on that [the original] note, I would not have signed it; I thought I was responsible on the whole thing."

[2] If it be true that the original note was signed by King after the transaction between Boyd and Showers had been closed, then he would not have been liable thereon, because there was lack of consideration for his contract. But the extension of time of payment, secured by the renewal note which he signed, was sufficient consideration to give binding force to his agreement. Bonner Oil Co. v. Gaines, 108 Tex. 282, 191 S. W. 552; People's State Bank v. Fleming-Morton Co. (Tex. Civ. App.) 160 S. W. 648. The fact that he may not have known that he was not liable on the original note could not affect the question, there being no claim that his misunderstanding of his legal rights was induced by any act of the other party to the contract.

[3] The parol agreement, if made, that

King should not be liable on the note, except in case of Boyd's death, was contradictory to the terms of the note which contained an absolute promise to pay at a stated date, and falls within the parol evidence rule, unless it be that the allegation that the agreement was made with no intention at the time of keeping it, and its subsequent breach makes a case of fraud that will avoid its application. Roundtree v. Gilroy, 57 Tex. 176; Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321; Hendrick v. Chase Furniture Co. (Tex. Civ. App.) 186 S. W. 277; Waters v. Byers Bros. & Co. (Tex. Civ. App.) 233 S. W. 572, 586–590; Chalk v. Daggett (Tex. Com. App.) 257 S. W. 228. The opinions in the two cases last cited contain elaborate reviews of the authorities on this subject, and are cited in lieu of a more extended reference to authorities in this opinion.

This parol agreement does not, in the opinion of the majority, evidence a conditional delivery—the delivery was unconditional, the agreement merely contradicts the terms of the writing as to payment. So that, in our opinion, both under the old law and under the provisions of the Negotiable Instruments Act, evidence of this parol agreement could not be admitted. Chief Justice Hall dissents from the conclusion just stated, and is of the opinion that section 16 of the Negotiable Instruments Act has made a change in the parol evidence rule as applicable to negotiable instruments, and as announced in the Texas cases referred to by us as authority. A similar question as to the meaning of said law arose in the case of Waters v. Byers Bros., supra, and the majority of the court then held contrary to the view taken by Judge Hall. The majority of the court as it is now constituted adheres to the majority conclusion in the Waters v. Byers Case. The writer of the present opinion wrote the majority opinion in that case, and we here refer to that opinion for a restatement of our views as to this question. See 233 S. W. 588, 589 (5–7). In this connection we cite as additional authority the case of Security Savings Bank v. Rhodes, 107 Neb. 223, 185 N. W. 421, 20 A. L. R. 412, decided after the decision in Waters v. Byers Bros. We refer also to the elaborate note in 20 A. L. R., beginning at page 421—the Waters-Byers Case is discussed in this note.

[4] The appellees' principal contention is that the parol agreement, made without intention of performance, and its breach constitutes such fraud as will take the case out of the parol evidence rule. It is true that in some instances a promise to be performed in the future, made with no intention of performance, may sustain a charge of fraud; such rule was evolved in the development of the law of fraud, and as an exception to the general rule that fraudulent representations that will avoid a contract must be as to existing facts. But this rule cannot logically be applied to an oral agreement made in connection with a written agreement, and which contradicts the terms of the writing, for the reason that in such case the parol evidence rule precludes the proof of the oral agreement, so that there is no foundation on which to build the fraud charge. If truth were capable of exact ascertainment in judicial trials, there would be no reason for the parol evidence rule—its justification is that it is necessary to preserve the written contract as a means of expressing agreements made between parties thereto in a way that will not be subject to further question as to what those agreements were.

The rule sometimes, no doubt, works hardships and injustice; on the other hand, it ofttimes forestalls fraud and perjury, and is almost necessary to the safe transaction of the business of the country. We do not take the time to consider in detail the limitations and exceptions which have been worked out by the courts designed to prevent the application of the rule so as to result in injustice—fraud inducing the execution of the instrument is one of them. But if this exception would permit the establishment of fraud by proof of the oral agreement, in contradiction of the writing, and its violation, then the rule itself would be practically abrogated. A few authorities do, to some extent at least, sustain appellant in this contention. Rearich v. Swinehart, 11 Pa. 233, 51 Am. Dec. 540; Phillips v. Meily, 106 Pa. 536; Murray v. Dake, 46 Cal. 645; O'Brien v. Paterson Brewing & Malting Co., 69 N. J. Eq. 117, 61 A. 437. It has been said that the Pennsylvania courts have gone further in this direction than any others. See Wigmore's comments on these decisions in sections 2431 and 2439, Wigmore on Evidence. But even in the decisions of the Pennsylvania courts, it was intimated that a "parol agreement in direct and express contradiction of the instrument" could not be made the basis of the charge of fraud. Rearich v. Swinehart, supra. In one of the cases it was said that, to maintain a charge of fraud that will avoid the writing, "there must be evidence of fraud other than that which may be derived from the mere difference in the parol and written terms." Thorne v. Warflein, 100 Pa. 527. The Supreme Court of this state, in the case of Lanius v. Shuber, 77 Tex. 24, 13 S. W. 614, rejected the contention that allegations of the character we are considering would sustain a defense of fraud. See, also, the following authorities as being more or less directly in point on this question: Houghton v. American Trust & Savings Bank (Tex. Civ. App.) 247 S. W. 904; Towner v. Lucas, 13 Grat. (Va.) 705, 716; Rasdall v. Rasdall, 9 Wis. 386; Callanan v. Judd, 23 Wis. 353; Hall v. Bank, 173 Mass. 16, 53 N. E. 154, 44 L. R. A. 319, 73 Am. St.

Rep. 255; Vansant v. Runyon (Ky.) 44 S. W. 949; Wigmore on Ev. §§ 2439 and 2431; Jones on Ev. (Horwitz) § 435.

Our conclusion is that the appellee King showed no grounds of defense against liability on the note, and we therefore reverse and render the judgment for the plaintiff.

HALL, C. J. I find myself unable to agree with the majority upon the material question involved in this appeal which is the effect of that section of the Negotiable Instruments Law incorporated in the statutes of Texas as article 6001—16, V. S. C. S. Shorn of all verbiage inapplicable to the question at issue in this case, that article reads as follows:

"Every contract on a negotiable instrument is incomplete and ineffectual until delivery for the purpose of giving effect thereto. As between immediate parties, * * * the delivery may be shown to be conditional or for a special purpose only."

I think the majority opinion is incorrect in the holding that evidence of the parol agreement to the effect that King should be liable only in the event of the death of Boyd is inadmissible, because of the parol evidence rule. It is my opinion that the Legislature, by incorporating in the statutes of this state the Negotiable Instruments Law intended and has made an exception to the parol evidence rule as it affects negotiable instruments in contests between the immediate parties. That it was within the power of the Legislature to do so is not debatable, since, as in usury cases, it has exercised such power and has declared instruments tainted with usury invalid to that extent, even in the hands of innocent purchasers.

While the language of the article under consideration is plain, there is a woeful want of harmony in the decisions, both in England, where the Negotiable Instruments Law had its birth, and in this country, in applying the act to the facts of the cases. The importance of the question to the financial and commercial interests of the state demands that it be authoritatively settled one way or the other by the Supreme Court. I have not been able to find that our Supreme Court has ever passed upon the question. The learned judge who wrote the opinion in Chalk v. Daggett (Tex. Com. App.) 257 S. W. 228, made no direct reference to the Negotiable Instruments Law, and since no decision which he cited considered the effect of that statute upon negotiable instruments, I feel justified in voicing my dissent. The question was discussed pro and con at some length by this court in Waters v. Byers Bros. & Co., 233 S. W. 572, but that case never reached the Supreme Court. In that case this writer attempted "to give his reasons for the faith that is within him," and by at least a supreme physical effort and

with the expenditure of much nervous energy collated a multitude of authorities from many jurisdictions in which the Negotiable Instruments Law operates which sustained him in his views. His opinion in that case—to which he "points with pardonable pride" as a legal classic—is for the sake of brevity hereby made an exhibit to this dissent.

Since negotiable paper is the lifeblood of our commerce and because so many of the ablest courts of the country have differed as to what effect should be given the act, the writer feels that the Supreme Court of this state should have an opportunity of definitely settling the matter. My position briefly stated is that if Showers agreed at the time King signed the note, "that he would not hold said King liable on said note, nor expect him to pay it, and would not sue him or try to hold him liable thereon, except in the event the said Boyd should die before the maturity of the note," and if King signed it relying upon that promise, then there was such a conditional delivery, and a delivery for such special purpose as brings the case within the provisions of section 16 of the act. As shown by numerous authorities cited in the Waters Case, supra, there may be aside from the Negotiable Instruments Law, a manual delivery of a note, even to the payee, upon conditions which take the case out of the parol evidence rule.

In this case we are not concerned with the mere manual delivery made by Boyd to Showers, nor its effect under the law merchant generally, but the issue is: Was there a delivery by King "for the purpose of giving effect thereto" and "for a special purpose only"? We are not considering a case of absolute delivery of a note with the understanding that it shall become void upon the happening of some future event. Here the condition affects the very existence of any obligation whatever, notwithstanding its mere manual delivery, and if effective, negatives the idea of absolute delivery of the note for the purpose of giving effect thereto. By a solemn contract of the parties, the death of Boyd is expressly made a condition precedent to the "delivery of the instrument for the purpose of giving effect thereto" as between Showers and King. If Boyd should live until the maturity and collection of the note, then the condition or contingency which could alone vitalize it as to King, has not happened, and as to him the obligation is "incomplete and revocable," since his delivery of it was not for the purpose of giving effect thereto according to its tenor and reading. As between Showers and King it was not a complete contract until the death of Boyd. That the note was a valid obligation against Boyd is conceded, but I insist that Showers and King had the right to so contract as to limit and postpone the beginning of the latter's liability to any date in futuro, and to predicate it upon the happen-

ing of any event which they might determine, not inconsistent with public policy or express statute. I think that section 16 clearly recognizes this right and respects it when exercised by the parties, and the courts should not arbitrarily disregard the agreement.

I believe the statute means what it says and says what it means. It is not the prerogative of the court to make or unmake contracts for competent parties, but their duty is discharged when they bind such parties exactly as they have bound themselves. If Showers and King were willing that the latter should become liable only in the event of the death of Boyd, and the note was, as between them, delivered for the purpose of giving effect thereto solely upon that condition and for that special purpose only, and that no contract existed between them until the death of Boyd, then, in my opinion, the courts, even aside from the issue of fraud, must under the plain letter of the statute respect the agreement, regardless of the effect of the parol evidence rule generally, and I think the tendency of the decisions elsewhere sustains that contention. I feel that I am amply supported by a formidable array of decisions cited in the Waters Case, supra, and in the following: Eng. Ruling Cases, pp. 194–210; 20 A. L. R. 421–502; L. R. A. 1917C, 306; L. R. A. 1916B, 1048; 33 L. R. A. (N. S.) 892; 18 L. R. A. (N. S.) 289; Rev. Ed. Rose's Notes (U. S.) to Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; Security Savings Bank v. Hambright, 195 Iowa, 1147, 193 N. W. 576; Gardner v. Gardner (R. I.) 121 A. 385; Ricords v. Mead, 45 S. D. 617, 189 N. W. 703; Witte v. Broz (Neb.) 197 N. W. 121; Dickson v. Protzman, 123 Wash. 247, 212 P. 249; Silva v. Gordo (Cal. App.) 224 P. 757.

If the extension and renewal note was executed with the understanding that King's liability was predicated upon the condition of the death of Boyd before the maturity of the second note, then the extension was no more a consideration to King for executing the second note than existed at first.

For the reasons stated, I think the judgment should be reversed and remanded.

## On Motion for Rehearing.

JACKSON, J. [5] In his motion for rehearing B. S. King, hereinafter called appellee, earnestly insists that the court, as constituted at the time the majority opinion was written, was in error in holding that the defense urged by appellee "does not, in the opinion of the majority, evidence a conditional delivery. The delivery was unconditional; the agreement merely contradicts the terms of the writing as to payment." The appellee testified in substance that he was approached by Mr. Showers, after the note had been signed by Rex Boyd, and that Mr. Showers said that Rex had plenty of stuff, and that he was not asking appellee to sign the note expecting him to have to pay it; that Showers did not care whether Rex paid the note in 10 years or not, and that he would not expect appellee to pay it as long as Boyd lived; all he wanted was that, in the event Boyd died, appellee and the boys could go into the estate and settle it up. On this proposition appellee signed the note.

Do these facts testified to by appellee make a conditional delivery of the note which prevents it from becoming effective as to appellee until the happening of a future contingency—the death of Boyd—or is it "a delivery for the purpose of transferring the property in the instrument?" The opinion of the majority of this court as now constituted is that testimony as to the oral agreement contemporaneous with the making and delivery of the note, to be admissible, must tend to prove that the delivery of the note itself was made upon the condition that it should not be complete or effective until the death of Rex Boyd. We do not think that the testimony of appellee shows "conditional" delivery of the note or its delivery "for a special purpose only," but shows that it was delivered "for the purpose of transferring the property in the instrument" with the understanding that if Boyd died, appellee would pay the note—a stipulation pertaining to the obligation of appellee to pay, rather than a conditional delivery which prevented the note from becoming effective until the death of Boyd.

We conclude, for this reason, that the evidence of appellee is in violation of the parol evidence rule, and the motion for rehearing is therefore overruled.

RANDOLPH, J., concurs in the above opinion.

HALL, C. J., dissents.