[No. 18483. Department One. October 30, 1924.]

THE FIRST METHODIST EPISCOPAL CHURCH, *Appellant,*
v. J. G. SODEN, *Respondent.*[1]

BILLS AND NOTES (4, 26-1) — CONDITIONAL DELIVERY — NATURE
AND EXTENT OF LIABILITY — CONDITIONS PRECEDENT. Parol evidence
is admissible to show that, when a promissory note was delivered
to a church solicitor who was taking subscriptions, it was orally
agreed that, in case the promisor sold out his business and left the
city (which he did before anything became due), he was not to be
liable on the note, on the theory that a delivery upon a condition
precedent may be shown by parol (MAIN, C. J., dissenting).

Appeal from a judgment of the superior court for
Yakima county, Hewen, J., entered June 30, 1923, upon
findings in favor of the defendant, in an action on a
promissory note, tried to the court. Affirmed.

*L. B. Vincent* and *F. A. Kern,* for appellant.
*Snively & Bounds,* for respondent.

PARKER, J.—The plaintiff, church, commenced this
action in the superior court for Yakima county, seek-
ing recovery from the defendant, Soden, upon a paper
written in the form of a promissory note, signed by
him, reading as follows:

"Ellensburg, Wash., Sept. 1st, 1919.
"For and in consideration of all other pledges here-
tofore made, I promise to pay to the Board of Trustees
of the First Methodist Episcopal church, of Ellens-
burg, Wash., for Church Building Fund, the sum of
$250.00, payable $50.00 on July 1st, 1920, $100.00 on
January 1, 1921, and $100.00 January 1, 1922, with
interest at the rate of 8 per cent after maturity.
"Payments to be made at the Washington National
Bank. (Signed) J. G. Soden."

Soden resists recovery upon the ground that, while
the note was placed in the hands of the solicitor of the

[1]Reported in 229 Pac. 534.

church following its signing, it was not delivered to the solicitor or the church for the purpose of evidencing a present binding obligation, but was conditionally delivered with the express mutual understanding that it was not to be considered as delivered for the purpose of evidencing a present unconditional obligation, and was not to become an obligation against him unless he remained in business in Ellensburg; and that he sold out his business in Ellensburg with a view of leaving there, before the maturity of the first installment of the note, and soon thereafter moved with his family from Ellensburg to Yakima. A trial upon the merits before the court sitting without a jury resulted in findings and judgment denying to the church any recovery, from which it has appealed to this court.

While the note bears date September 1, 1919, it was signed by Soden, and at the same time placed in the hands of the solicitor of the church, about December 1, 1919. The earlier date is manifestly accounted for by the fact that it is printed as a part of the form used for the subscriptions. At that time Soden was in the butcher business in Ellensburg, and was then contemplating selling his business and moving away from Ellensburg; he then having entered upon negotiations looking to that end. Neither he nor any of his family were members of the church, though they occasionally attended services there and their children attended its Sunday school. Soden testified, touching his conversation with the solicitor for the church before and at the time of the signing of the note, as follows:

"Q. Now, before you signed this note, what did you say and what did he say? A. I told him several times before, when he approached me, that I didn't think I would be in Ellensburg, and so I didn't think it would be fair for me to sign there, because wherever else I went I would be supposed to help, and I was not

a rich man, and so long as I staid there I would help them, which I did. Q. You had made contributions before, or your wife had, and paid them? A. Yes, sir. . . . . Finally one day he came in and wanted me to pledge, and I just—I don't know, I got tired of him bothering around and I spoke up and said to him, 'Now if I sell out, this is no good, but if I stay here of course I will help you, and, well,' Mr. Young says, in his wishy-washy way, 'We will take care of that.' So I signed it. Q. Now, at that time did you say anything about selling out? A. I told him I was liable to sell out. Q. At that time had you an offer? A. Yes, sir. . . . Q. And later did you accept that offer? A. I did. . . . Q. When did you accept and sell out? A. About the first day of February. Q. What year? A. 1920.''

There is other evidence tending to support this testimony of Soden, though there is also some tending to contradict it. Soden sold his business in February, 1920, with a view of moving with his family from Ellensburg. This, it will be noticed, was some four months before the maturity of the first installment of the note, which by its terms was to mature July 1, 1920. After the sale of his business, Soden moved with his family to Yakima. There is no conflict in the evidence except as to the conversations had between Soden and the solicitor of the church shortly before and at the time of the signing of the note and the placing of it in the hands of the solicitor. The trial judge made findings in harmony with Soden's testimony. We do not think the evidence preponderates against such findings, and therefore must now so view the facts.

Was the note signed by Soden and placed in the hands of the solicitor of the church upon such an agreed condition precedent to its becoming a binding obligation that it should now be considered as never having been delivered to evidence a binding obligation?

We think this inquiry must be answered in the affirmative. We assume, for argument's sake, that if Soden had not sold his business until the maturity of the first installment of the note on July 1, 1920, the note might be considered as being effectually unconditionally delivered as of that date; but that is not this case, since Soden sold his business with a view of moving with his family away from Ellensburg some four months before that time. So whatever view may be taken as to when Soden's continuing or discontinuing of his business in Ellensburg was to be decided by him, he manifestly had the privilege of so deciding and acting upon such decision at any time up to the maturity of the first installment of the note, to wit, July 1, 1920. The legal principles which we conceive to be controlling in our present inquiry, as enunciated by the weight of authority, are well stated in the text of 1 Joyce, Defenses to Commercial Paper (2d ed.) at § 486, as follows:

"Although it is held in many cases that a delivery of a note to the payee by the maker will operate as an absolute delivery, notwithstanding it is agreed that its taking effect is dependent upon a condition or contingency, on the ground that such an instrument can not be delivered as an escrow to the payee, yet the weight of authority supports the rule that in an action by the payee of a note against the maker, the latter may show that he delivered the instrument to the payee, it being agreed that it should not take effect until the happening of a certain contingency or the performance of a certain condition and that neither the contingency has occurred nor the condition been performed. 'Such parol evidence does not contradict the note or seek to vary its terms. It merely goes to the point of its nondelivery. The note in its terms is precisely what both the maker and the payee intended it to be. No one desires to vary its terms or to contradict them.' So it is said in another case: 'Of

course, no rule is more elementary than that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. But the rule is almost equally well settled that parol evidence may be given to prove the existence of any separate parol agreement constituting a condition precedent to the attaching of any obligation under the written instrument. This is not to vary a written instrument, but to prove that no contract was ever made, that its obligation never commenced.' ''

The quotations there made by that learned author are from *McFarland v. Sikes,* 54 Conn. 250, 7 Atl. 408, 1 Am. St. 111, and *Smith v. Mussetter,* 58 Minn. 159, 59 N. W. 995. This court, in *Ewell v. Turney,* 39 Wash. 615, 81 Pac. 1047, recognized this as the correct view of the law, saying:

"It is competent for a maker of a note to show by parol that the note was to become a binding agreement only on the happening of a certain contingency, and that the contingency has not happened.      ."

though that decision was really rested upon failure of proof of the claimed conditional delivery of the note there in question. Our recent decision in *Dickson v. Protzman,* 123 Wash. 247, 212 Pac. 249, adheres to this view of the law.

Counsel for the church cite and rely upon our decision in *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751, where there was drawn in question a contemporary parol agreement that Mitchell, the maker of the note, "should not be bound thereby either as principal or surety;" in other words, that the maker should not be bound under any circumstances. Answering this contention we said:

"It has been repeatedly held by this court that, in the absence of fraud or mistake, it is incompetent for one who signs a promissory note as principal to set

up an independent collateral agreement limiting or exempting him from liability. He is bound by the terms of his obligation. *Tacoma Mill Co. v. Sherwood,* 11 Wash. 492, 39 Pac. 977; *Bryan v. Duff,* 12 Wash. 233, 40 Pac. 936, 50 Am. St. 889; *Allen v. Chambers,* 13 Wash. 327, 43 Pac. 57; *Wingate v. Blalock,* 15 Wash. 44, 45 Pac. 663; *Shuey v. Adair,* 18 Wash. 188, 51 Pac. 388, 63 Am. St. 879, 39 L. R. A. 473; *Hemrich v. Wist,* 19 Wash. 516, 53 Pac. 710.''

It is at once apparent that no question of conditional delivery of the note was there involved; but it was a question of the maker not being liable at all under any circumstances. A critical review of the cases cited in the above quotation from that decision will show that in none of them was there involved any question of conditional delivery. Counsel for the church also cite and rely upon our decisions in *Post v. Tamm,* 91 Wash. 504, 158 Pac. 91, and *Rhodes v. Owens,* 101 Wash. 324, 172 Pac. 241. In the *Post* case, there was drawn in question the making of a promissory note for $4,000, and a contemporary oral agreement that the payee was to subsequently make a will in which the maker was to become the beneficiary to the extent of $4,000, and that thereupon the note was to be returned. Manifestly, the delivery of the note and the obligation of the maker to the payee was recognized to the extent of $4,000. This, in its last analysis, was little else than an attempt to show that the obligation as evidenced by the note was to be satisfied by the making of a will with a bequest therein to the extent of $4,000 in favor of the maker of the note, plainly a condition subsequent. The delivery of the note as evidencing a present obligation was not questioned. In the *Rhodes* case, we think it clearly appears that there was no question of conditional delivery involved, but rather one of an attempted showing of failure of con-

sideration. Among the leading cases supporting our conclusion may be noted: *Burke v. Dulaney,* 153 U. S. 228; *Smith v. Dotterweich,* 200 N. Y. 299, 93 N. E. 985, 33 L. R. A. (N. S.) 892; and *Vincent v. Russell,* 101 Ore. 672, 201 Pac. 433, 20 A. L. R. 417. In the last cited decision, Justice Bean, speaking for the court, said:

"The rule sanctioned by a practically uniform line of authorities is that parol evidence is admissible to show that a negotiable note, absolute in form, although manually delivered to the payee, was not to become a binding obligation except upon the happening of a certain further event, since such evidence does not vary or alter the instrument, but tends merely to show that it never became a valid undertaking."

This is followed by numerous citations and an extended review of authorities.

We are of the opinion, since the contingency upon which the note was to become a binding obligation upon Soden, to wit, his continuing business in Ellensburg, did not occur after July 1, 1920, the date of the maturity of the first installment of the note, that its unconditional delivery as evidencing a binding obligation was never effected.

The judgment is affirmed.

HOLCOMB, TOLMAN, and MACKINTOSH, JJ., concur.

MAIN, C. J. (dissenting)—I am unable to agree with the views of the majority in this case. The evidence, as I understand it, shows that the note in question was delivered and became a binding obligation which was only to be defeated upon a condition subsequent, to wit, the removal of the respondent from the city of Ellensburg. The fact that the removal took place before the first installment became due does not make the condition upon which the note was delivered a precedent one and not a subsequent condition. I therefore dissent.