[No. 22794. Department Two. January 23, 1931.]

W. L. HARROP, *Appellant,* v. COFFMAN-DOBSON BANK & TRUST COMPANY *et al., Respondents.*[1]

*Harry A. Rhodes* and *Colvin & Rhodes,* for appellant.

*Hull & Murray* and *Grant Armstrong,* for respondents.

MITCHELL, J.—The pleadings and proof show that, for some time prior to October, 1926, the Yeomans Lumber Company, a corporation, engaged in the business of logging and operating a sawmill in Lewis county. W. C. Yeomans and Chas. L. Yeomans each owned fifty per cent of the stock of the corporation. W. C. Yeomans was president, and Chas. L. Yeomans, secretary and manager of the operations in the woods and at the mill. The appellant, W. L. Harrop, became the sales manager of the products of the corporation. The corporation decided to sell all of its tangible property, real and personal, and go out of business, and,

[1]Reported in 295 Pac. 165.

for that purpose, its two stockholders procured the services of the appellant, without any understanding as to price or prices at which the property should be sold, and without power in the appellant to make a contract with a prospective purchaser, only to get a prospective purchaser to be dealt with directly by the corporation or its legal officers. Nor was there any agreement as to compensation to be paid appellant, in this respect.

Thereafter, a sale was made to persons organized as the Pe Ell Lumber Company, who entered into a written contract with the Yeomans Lumber Company, by the terms of which payments were to be made at and through the Coffman-Dobson Bank & Trust Company, which, it appears, was trustee in certain outstanding bonds, secured by the property and holdings of the Yeomans Lumber Company.

Appellant, claiming to have been the cause by which the purchaser was procured, obtained an order, purporting to be that of the corporation, and signed by Chas. L. Yeomans, Secretary, drawn on the trustee in the sum of five thousand dollars in payment of commission claimed to be due the appellant. The order was dated October 28, 1926, and, not being paid by the trustee or otherwise, this suit was brought upon it, by the appellant, as a direct and express contract, on the part of the Yeomans Lumber Company, to pay the amount mentioned in the order. Upon the trial of the case to the court without a jury, findings of fact, conclusions of law, and judgment were entered against the plaintiff, who has appealed.

Several questions are presented on the appeal, but our opinion as to one of them is sufficient for an affirmance of the judgment. There is no claim on behalf of the appellant that the five thousand dollars mentioned in the order, and for which suit was brought,

was intended as compensation for services rendered by the appellant in the ordinary course of operations of the Yeomans Lumber Company, but intended as commission for special services of the appellant, in procuring a buyer, to whom the corporation sold all of its corporate property. The order was prepared by the appellant, the form of it for the signature being, "Yeomans Lumber Company, by ........................................................, President, by ........................................................, Secretary." Upon procuring the signature of Chas. L. Yeomans, as secretary, and upon the corporate seal being attached, the instrument was delivered to the appellant, with the statement by Chas. L. Yeomans that the signature of W. C. Yeomans was required to make the order valid. It appears that W. C. Yeomans was absent from the county at that time. The bank to whom the order was directed, was not supposed to pay until the Pe Ell Lumber Company paid over the purchase price of the property it had bought from the Yeomans Lumber Company. A few days after appellant mailed the order, signed only by Chas. L. Yeomans, Secretary, to the Coffman-Dobson Bank & Trust Company, the trust officer of the bank had a talk with appellant as to the need of the signature of W. C. Yeomans, as follows:

"Q. What was that conversation? A. Well, briefly, Mr. Harrop asked about it and I told him we couldn't pay it without the signature of Mr. W. C. Yeomans. And he asked about it, if I could get the signature, and I said I would try to; I would see Mr. Yeomans, he was in town every few days, and I would speak to him about it the first time he came to Chehalis. Q. Did you afterwards, pursuant to that request or otherwise, approach Mr. W. C. Yeomans for the purpose of getting him to sign the instrument, Identification A? A. I did; a few days later he was in the bank and I had a copy of this and I took it to Mr. Yeomans. Q. What was Mr. Yeomans' response; would he or

would he not sign it? . . . A. Well, Mr. Yeomans refused to sign.''

The appellant, in testifying, categorically denied that Mr. Chas. L. Yeomans, at the time of signing the order, stated that the signature of W. C. Yeomans was required, in order to make it valid. This question of fact is of the greatest importance in determining whether there was, in legal effect, a completed contract, or a delivery of the order to the appellant under circumstances that would make it binding. Chas. L. Yeomans, as already stated, testified that, when he physically delivered the instrument, he stated that W. C. Yeomans' signature would be required. That was denied by the appellant, although he testified that he never had any agreement with W. C. Yeomans as to the amount of five thousand dollars or any other sum, that he was to receive as a commission.

The trial judge saw and heard both of these witnesses and, besides, had for consideration the appellant's admission that he prepared the order in form requiring the signature of the president of the corporation, and, also, had for consideration the testimony of the trust officer of the bank that the appellant requested him to procure the signature of W. C. Yeomans, upon all of which, the trial court found that the appellant, himself, prepared the order for signature,

''. . . and presented said instrument to Charles L. Yeomans and requested his signature thereto as Secretary of Yeomans Lumber Company and on behalf of said company. That the said Charles L. Yeomans thereupon signed the same as Secretary and affixed the corporate seal, and notified the plaintiff that the additional signature of W. C. Yeomans as President of the corporation would be required to render the instrument valid. That, thereafter, the original of said instrument was presented to Coffman-Dobson Bank & Trust Co., defendant herein, with the request that it

perform its duties under the same by making a proper credit for the benefit of Pe Ell Lumber Company, and said Coffman-Dobson Bank & Trust Co. informed the plaintiff that it could not do so until the instrument had been signed by the President, W. C. Yeomans. Thereupon, at the request of the plaintiff, defendant Coffman-Dobson Bank & Trust Co. endeavored, but without success, to secure the signature of said W. C. Yeomans as President of Yeomans Lumber Company to said instrument.''

Upon an examination of the evidence, we are not at all disposed to disturb the findings of the trial court.

The case falls within the rule announced in *Antill v. Neely,* 145 Wash. 341, 260 Pac. 252, and cases therein cited. That was a case of contract with a real estate agent, for the sale of property by him. The property belonged to Mr. and Mrs. Neely, she usually attending to such matters for the community, but happened to be absent from the state at the time in question; and it was agreed, between the agent and Mr. Neely, that the latter should sign the contract, which should then be held by the agent until he wired Mrs. Neely for her approval. Upon receiving the wire, she refused to approve the deal. Afterwards, suit was brought on the contract to recover the commission Antill would have received, had the sale been consummated. The judgment was against the plaintiff, and this court, in affirming it, after speaking of appellant's argument that it destroys the sanctity of a written contract to allow oral testimony to show that there was a condition attached to the contract, pertinently said:

''But it must be remembered that this testimony was offered to show that there never was a delivery of the contract in question, because it was conditioned upon the securing of Mrs. Neely's approval. This was a condition precedent, and was offered to show that the contract, although signed, never became operative as

a contract. Our decisions fully sustain this view. *Reiner v. Crawford,* 23 Wash. 669, 63 Pac. 516, 83 Am. St. 848; *Seattle National Bank v. Becker,* 74 Wash. 431, 133 Pac. 613; *First Methodist Episcopal Church v. Soden,* 131 Wash. 228, 229 Pac. 534.''

The facts in this case are fully as strong as they were in that case as a basis for the application of the law. Here, as there, the instrument, though signed by one officer of the proposed obligor, and by him physically delivered, never became binding as a contract.

Affirmed.

BEELER, FULLERTON, BEALS, and MILLARD, JJ., concur.